ATTORNEY FOR APPELLANT
Victoria Ursulskis
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Nicole M. Schuster
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 49S05-0507-CR-319

ALBERT HARDISTER,

Appellant (Defendant below),

v.

STATE OF INDIANA,

Appellee (Plaintiff below).

Appeal from the Marion Superior Court, No. 49G20-0012-CF-221197
The Honorable Michael Jensen, Magistrate

On Petition To Transfer from the Indiana Court of Appeals, No. 49A05-0310-CR-535

**June 28, 2006**

**Boehm, Justice.**

Albert Hardister and Joshua Kendall were jointly tried and convicted of dealing cocaine and other offenses. Hardister's case was reversed by the Court of Appeals, and Kendall's conviction was affirmed by a different panel. We conclude that the convictions should be affirmed.

### Facts and Procedural History

Albert Hardister is one of four adults and one minor arrested in the melee described below. He was tried jointly with Joshua and Thomas Kendall. Hardister and Joshua were con-

victed of dealing cocaine and other offenses, and Thomas was acquitted. The fourth adult, Frederick Pace, was convicted of possession of cocaine in a separate trial.

On the evening of December 5, 2000, Indianapolis Police officers Jack Tindall and Christopher Lawrence responded to an anonymous tip that persons with guns were "cooking drugs" at 407 North Hamilton Avenue in Indianapolis. That address was one side of a duplex with units at 405 and 407. The officers went to the front porch of 407, and officer Tindall knocked on the door. When no one answered, he knocked again. Hardister appeared at a window approximately a foot and a half to the right of the front door, pulled back an "opaque" covering and made eye contact with Tindall. Tindall shined his flashlight on his badge, identified himself as a police officer, and asked Hardister to open the door. A second man pulled back the covering and also looked out the window. The officers then heard running footsteps and looked through the window to see the silhouettes of two men fleeing to the rear of the residence.

The officers believed the two were trying to exit through the back door, and followed a sidewalk from the front porch along the side of the house to the rear. When no one appeared at the back door, Tindall looked through an uncovered rear window and observed Hardister pouring a white powder substance down the drain of the kitchen sink. Tindall yelled at Hardister to stop and open the back door, but Hardister instead ran back toward the front of the house. At that point, Tindall heard screams from the front of the house and returned to the front.

Meanwhile, officer Lawrence had stopped to look through a side window, and observed three men huddled together in the kitchen. Lawrence then proceeded to the rear, and when no one exited through the back door, he returned to the side window. At that point, Lawrence heard a noise from above, looked up, and saw a man climb out a second story window and then reenter the house. In response to an additional commotion coming from the front of the house, officer Lawrence then ran to the front.

By the time Lawrence and Tindall reached the front of the house, three occupants of 407, later identified as Joshua and Thomas Kendall and the juvenile, had gained access to the roof of the duplex via a second story window. Additional officers had arrived on the scene and ordered all three to kneel down on the roof. Thomas and the juvenile complied but Joshua ran across the roof toward an adjacent building, dropping plastic bags of white powder onto the roof and

2

ground as he went. When Joshua reached the edge of the roof of the duplex, he tossed another bag at an officer's feet. Joshua then jumped to the roof of a neighboring duplex, lept back onto the roof of 405-407, and reentered 407 through a second story window.

After receiving permission from the residents of 405, officers accessed the roof through 405 and arrested Thomas and the juvenile. The officers then entered 407 through a second story window and ordered everyone inside the house to come out with their hands up. Frederick Pace emerged voluntarily from a bedroom, and Joshua and Hardister were found hiding in the attic. All three were arrested. A pat down of Joshua produced $1,600 in small bills. After securing a search warrant, officers searched 407 and seized over 300 grams of cocaine; plastic baggies; a scale and plate covered with cocaine residue; an additional $1,700 in cash; cellular phones; a surveillance system including a camera, video monitor and light that lit when the back door bell was pushed; a loaded handgun and a shotgun; and ammunition. Laboratory tests confirmed that the bags tossed onto and from the roof contained cocaine.

A jury found Hardister guilty of five counts: Class A felony dealing cocaine, felony possession of cocaine as a Class A felony by reason of proximity to a park and the amount of cocaine involved, possession of cocaine and a firearm as a Class C felony, unlawful possession of a firearm by a serious violent felon as a Class B felony, and obstruction of justice, a Class D felony. The court sentenced Hardister to fifty years for dealing, fifteen years for unlawful possession of a firearm by a serious violent felon, and three years on the obstruction count, all to be served consecutively for a total executed sentence of sixty-eight years. The court also imposed eight years for possession of cocaine and a firearm to be served concurrently with the sentences for dealing and possession of a firearm by a serious violent felon. Citing double jeopardy concerns, the trial court did not enter judgment or conviction on the Class A felony possession of cocaine.

Hardister appealed his convictions and sentence on several grounds. The Court of Appeals reversed, holding that police observations through the windows of the residence constituted unlawful searches under the federal and state constitutions, that all evidence derived from the subsequent search of the residence was required to be excluded, and that the remaining evidence was insufficient to support Hardister's conviction on any of the five counts. Hardister v. State,

821 N.E.2d 912, 924 (Ind. Ct. App. 2005), <u>reh'g denied</u>, 2005 Ind. App. LEXIS 535 (Ind. Ct. App. Mar. 29, 2005). We granted transfer. 841 N.E.2d 175 (Ind. 2005).

Joshua Kendall also appealed and a different panel of the Court of Appeals affirmed his convictions and sentence in an opinion that is substantially consistent with this opinion. <u>Kendall v. State</u>, 825 N.E.2d 439, 455-56 (Ind. Ct. App. 2005).

## I. Suppression of Evidence Under the State and Federal Constitutions

Hardister argues that the officers' accounts of what they observed through the windows of the residence together with the weapons, drugs and other items seized from the residence must be suppressed under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Despite an exceptionally well-presented appeal, for the reasons explained below, we do not agree.

The Court of Appeals found no Fourth Amendment interest implicated when officers Tindall and Lawrence approached the front door of 407 to investigate and observed Hardister and another through a covered window as the two turned and fled. We agree. The Fourth Amendment protects citizens against unreasonable searches and seizures. No unreasonable search occurs when police enter areas of curtilage impliedly open to use by the public to conduct legitimate business. <u>See</u> <u>Wayne R. LaFave</u>, <u>Search and Seizure: A Treatise on the Fourth Amendment</u> § 2.3(c) (4th ed. 2004) (summarizing cases). Legitimate business includes a "knock and talk" where police use normal routes of ingress and egress from a residence to make appropriate inquiries of the occupants. <u>Id.</u> An anonymous tip is not a basis for either reasonable suspicion or probable cause, but it is sufficient to make inquiries which the occupants are free to decline to answer if they so choose. Accordingly, the officers' knock on the front door and observation of flight from a vantage point in front of the door did not implicate the Fourth Amendment. <u>See</u> <u>Sayre v. State</u>, 471 N.E.2d 708, 711-14 (Ind. Ct. App. 1984), <u>cert. denied</u>, 475 U.S. 1027 (1986).

Notwithstanding the propriety of the initial "knock and talk," Hardister argues that the residents' flight amounted to a refusal to admit the officers and therefore the officers' legitimate business was at an end and they were required to leave the premises. The State responds that the

4

residents' flight created an exigent circumstance that justified even warrantless entry and pursuit of the residents through the house. We disagree with both Hardister and the State. In response to a "knock and talk" residents have the right to deny officers admission and to refuse to answer questions. See, e.g., Illinois v. Wardlow, 528 U.S. 119, 125 (2000); Cox v. State, 696 N.E.2d 853, 858 (Ind. 1998). If residents exercise this right, officers generally must leave and secure a warrant if they want to pursue the matter. We do not agree with Hardister, however, that flight in response to a knock on the front door is the functional equivalent of denying officers admittance. As Wardlow held, "unprovoked flight is simply not a mere refusal to cooperate." 528 U.S. at 125. It does not merely refuse entry; it also adds to the information available to the officers. It is "the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such" and warrants further investigation by police. Id. at 124.

In Terry v. Ohio, 392 U.S. 1, 30 (1968) the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. A Terry stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 185-89 (2004). Reasonable suspicion to make an investigatory stop exists if a suspect, present in a high crime area, engages in unprovoked flight in response to noticing law enforcement officers. Wardlow, 528 U.S. at 125. Reasonable suspicion can also be based on an anonymous informant's tip if other facts establish reliability or the basis of the informant's knowledge. See, e.g., Alabama v. White, 496 U.S. 325, 329-31 (1990); Adams v. Williams, 407 U.S. 143, 147 (1972). Corroboration is ordinarily necessary where nothing the tipster said shows either reliability or the informant's basis of knowledge. LaFave, supra, at § 9.5(h). In the present case, the tip that residents were "cooking drugs" disclosed neither a basis of knowledge nor evidence of reliability, and was insufficient standing alone to establish reasonable suspicion. However, the residents' headlong flight toward the rear of the house coupled with the anonymous tip and 407's location in an area known for narcotics traffic furnished reasonable suspicion justifying an investigatory stop of the fleeing occupants. The officers' efforts to intercept the fleeing pair were therefore justified as necessary to pursue the investigation.

5

We do not agree with the State, however, that the flight created an exigent circumstance that justified warrantless entry and pursuit of the fleeing residents through the house. When there is probable cause to believe a person has just committed a crime and is in a particular dwelling, police may make a warrantless arrest in the home. Warden v. Hayden, 387 U.S. 294, 298-99 (1967). Similarly, when there is probable cause to believe evidence is in a particular dwelling and police reasonably believe the evidence will be destroyed or removed before they can secure a search warrant, warrantless entry is justified. See, e.g., United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1973). There is, however, no general emergency exception to the warrant requirement. See Mincey v. Arizona, 437 U.S. 385, 393-94 (1978). In the present case, the anonymous tip and corroborating circumstance of flight in an area known for narcotics traffic provided reasonable suspicion to believe some kind of criminal activity was afoot but did not furnish probable cause to believe the residents of 407 had just committed a crime or probable cause to believe drugs were about to be destroyed. See United States v. Chambers, 395 F.3d 563, 568-69 (6th Cir. 2005) (no exigency justifying warrantless entry into a house where police conducting "knock and talk" heard occupants call out "police" and heard footsteps as occupants ran into another room). Therefore, the officers would not have been justified if they had made a warrantless entry into the house to pursue the occupants of 407. Id. at 569.

We do not agree with Hardister, however, that police pursuit to the rear of 407 through the curtilage was unlawful. In the typical Terry case police acting upon reasonable suspicion detain a suspect in a public place. This case is unusual in that police pursuit involved an invasion of the curtilage of a residence. Hardister argues that police may not invade curtilage without probable cause and a warrant. Therefore, he reasons, the officers' observation of Hardister disposing of drugs through the side and rear windows of the house was an unlawful search. We disagree. The mere fact that officers enter curtilage to conduct an otherwise lawful Terry stop does not ipso facto render the physical invasion of the curtilage an unlawful search. See United States v. Fiasche, 2006 U.S. Dist. LEXIS 10529, *23-24 (N.D. Ill. Mar. 10, 2006); State v. Davenport, 801 So. 2d 380, 384-85 (La. Ct. App. 1999); State v. Kelly, 119 S.W.3d 587, 593-94 (Mo. Ct. App. 2003); Davis v. State, 905 S.W.2d 655, 661-62 (Tex. App. 1995); State v. Ryea, 571 A.2d 674, 675 (Vt. 1990). Similarly, we recently held that "the mere fact that an area subjected to police observation is within the curtilage [does not] transform[] a warrantless observa-

6

tion or inspection into an unconstitutional search." See Trimble v. State, 842 N.E.2d 798, 801 (Ind. 2006), aff'd on reh'g, 2006 Ind. LEXIS 423 (Ind. May 24, 2006).

Hardister argues this authority is distinguishable because the police observations in these cases were made from areas impliedly open to use by the public. He claims the backyard of 407 offered no implied invitation to the general public to enter and that he had a reasonable expectation of privacy in the backyard. Whether an individual has a cognizable privacy interest in a particular area surrounding his home depends upon the totality of the circumstances, including the proximity of the area to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. United States v. Dunn, 480 U.S. 294, 301 (1987). Hardister claims he had an expectation of privacy because the side and rear windows were covered[1] and because the sidewalk from which the observations were made was in close proximity to the house. The State responds that Hardister had no cognizable expectation of privacy because the backyard and sidewalk were shared with the residents of 405 and were not enclosed by a fence. We agree with the State that the sidewalk running through the backyard was at most a semi-private place. See United States v. James, 40 F.3d 850, 862 (7th Cir. 1994), vacated on other grounds, 516 U.S. 1022 (1995) (no search where officer used a paved walkway along side of duplex leading to rear side door, passage to the rear side door was not impeded by a fence, and both the paved walkway and rear side door were accessible to the general public); compare Divello v. State, 782 N.E.2d 433, 439 (Ind. Ct. App. 2003), trans. denied (unlawful search where officers left the areas surrounding a house where visitors could be expected to go).

We do not regard the public or private status of the sidewalk as controlling. Even if the sidewalk alongside the house and the backyard are deemed private areas, the officers' physical invasion of the area surrounding the house was not a search. A "search" involves an exploratory investigation, prying into hidden places, or a looking for or seeking out. LaFave, supra, at § 2.1(a) (citing C.J.S. Searches & Seizures § 1 (1952)). Officers Tindall and Lawrence engaged in no exploratory investigation in the backyard of 407. Their "invasion" of the area surrounding the

---

[1] The parties dispute whether the rear window was covered or uncovered. In ruling on the motion to suppress, the trial court found that officer Tindall saw Hardister destroying drugs through the rear window. We interpret this as an implicit finding that the window was at least partially uncovered.

house involved nothing more than pursuit of fleeing suspects along a sidewalk that leads to the back door. Law enforcement is not baseball and the residence of a fleeing suspect does not constitute a base that is a safe haven from being tagged out. The fact that the residents did not emerge out the back did not negate the officers' reasonable belief that flight out the back door would occur or the reasonableness of the officers' pursuit of the residents to prevent the anticipated flight. Moreover, once officers Tindall and Lawrence were lawfully present in the backyard, their looking into the kitchen through the side and rear windows, was also reasonable as an effort to locate the fleeing suspects. To be sure, they observed evidence of a crime in process—dumping white powder down the drain—but their objective to contain the apparently fleeing suspects is sufficient to secure the premises and is a reasonable response to the suspicion created by the suspects' flight.

Once the officers observed the cocaine going down the drain, they were presented with exigent circumstances that justified entry into the residence. Hardister challenges the warrantless entry and the search warrant as derivative of the officers' unlawful observations through the side and rear windows. He also argues that the officers created exigency and therefore may not rely on exigency to justify warrantless entry into the residence. As a general matter, officers may not circumvent the warrant requirement by purposefully creating exigent circumstances. See United States v. Rosselli, 506 F.2d 627, 630 (7th Cir. 1974); State v. Williams, 615 N.E.2d 487, 488-89 (Ind. Ct. App. 1993). Hardister's reliance on Rosselli and Williams is misplaced. In those cases police had probable cause to search a residence and offered no legitimate reason for their failure to seek a warrant. By contrast, in the present case, the uncorroborated anonymous tip was not enough to obtain a search warrant for 407. More importantly, there is no evidence that the police foresaw that residents would attempt to destroy evidence in response to the "knock and talk." The officers' subsequent warrantless entry into the home was justified because officer Tindall's observation of Hardister's disposing of a white powder established probable cause to believe drugs were inside and at risk of imminent destruction. See Rubin, 474 F.2d at 268. Indeed, the Supreme Court recently unanimously held that exigent circumstances justify entry into a home, Brigham City v. Stuart, 2006 U.S. LEXIS 4155 (U.S. May 22, 2006), and specifically identified destruction of evidence as one example of exigent circumstances. Id. at **10. See also Holder v. State, 847 N.E.2d 930 (Ind. 2006), which antedated Brigham City by four days.

8

Hardister also argues that the police action violated the separate protection against unreasonable search and seizure provided by Article I, Section 11 of the Indiana Constitution. The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct. Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001). For the reasons discussed above, we conclude that the police pursuit of the fleeing residents into the backyard was reasonable and involved no separate violation of the protections afforded under the Indiana Constitution. We therefore hold that the trial court properly admitted the officers' testimony regarding what they observed through the side and rear windows of the residence plus the weapons, drugs and other items seized pursuant to the warrant.

## II. Sufficiency of Evidence

Hardister argues that the State failed to prove his possession of both drugs and weapons and therefore that he was entitled to judgment on the evidence as to (1) Class C felony possession, which required proof of possession of both cocaine and a firearm, and (2) possession of a firearm by a serious violent felon. We review a denial of a motion for judgment on the evidence using the same standard as the trial court. Topp v. Leffers, 838 N.E.2d 1027, 1031 (Ind. Ct. App. 2005), trans. denied. We examine the evidence tending to support the verdict and all reasonable inferences without reweighing the evidence or assessing witness credibility. Baran v. State, 639 N.E.2d 642, 646 (Ind. 1994).

Evidence of constructive possession is sufficient if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband. Goliday v. State, 708 N.E.2d 4, 6 (Ind. 1999); Grim v. State, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003). Hardister argues that the State failed to prove possession of more than three grams of cocaine necessary to sustain his conviction for Class C felony possession because the cocaine residue recovered from the kitchen sink after his attempt to dispose of it weighed less than three grams. Hardister was found in a house containing minimal furniture, large quantities of cocaine, along with ammunition, weapons, surveillance equipment, a scale, and approximately $1,700 in small bills. The jury heard testimony that these items are consistent with a cocaine manufacturing operation. They heard testimony that Hardister and one other individual fled to the rear of the house when officers knocked at the front door and that Hardister was subsequently seen dumping

white powder—later established to be cocaine—down the kitchen sink. Cocaine weighing over 300 grams in the aggregate was recovered from the kitchen, basement, and bedroom closet as well as from the roof and lawn, where it was thrown by Joshua Kendall. Hardister's efforts to dispose of cocaine demonstrate his dominion over it. The jury could readily have found constructive possession of cocaine in excess of three grams beyond a reasonable doubt.

Hardister's dominion over the concealed weapons, necessary to sustain his convictions for Class C felony possession and Class B felony possession of a firearm by a serious violent felon, is less clear. Where a person's control over the premises where contraband is found is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband. Goliday, 708 N.E.2d at 6. Additional circumstances may include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs or weapons; (5) drugs or weapons in plain view; and (6) location of the drugs or weapons in close proximity to items owned by the defendant. Ladd v. State, 710 N.E.2d 188, 190 (Ind. Ct. App. 1999).

A handgun was recovered from the basement and a shotgun at least somewhat concealed was recovered from the living room. Hardister was arrested in the attic. Moreover, although Hardister fled and the guns were part of a drug manufacturing operation, there was no evidence establishing Hardister's possessory interest in 407, where the guns were found. The State contends that proof of a possessory interest in the premises where the weapon was found is sufficient to prove capability. See Gee v. State, 810 N.E.2d 338, 340-41 (Ind. 2004). That may be true, but we have no proof that Hardister was other than a visitor at 407. Thomas Kendall persuaded the jury that he was simply in the wrong place at the wrong time. Thomas Kendall testified that he and the juvenile lived with Thomas' sister in December 2000, and that on December 5, they had gone to visit Joshua Kendall, who was living at 407. Thomas' driver's license corroborated his testimony that he lived at the same address as his sister, not 407. Frederick Pace testified that he lived elsewhere and went to 407 to use the telephone of his friend, Joshua Kendall. Similarly, there was no proof as to Hardister's possessory interest in 407.

We conclude that the State failed to establish Hardister's constructive possession of the weapons. Accordingly, his convictions for Class B possession of a firearm by a serious violent felon and Class C possession of cocaine and a firearm are reversed.

### III. Multiple Convictions

Hardister argues his conviction for Class C possession of cocaine and a firearm cannot stand for another reason. Hardister was convicted of Class A dealing based on possession of the same cocaine that supports the Class C possession count. Hardister's argument focuses on the double jeopardy prohibition contained in Article I, Section 14 of the Indiana Constitution and on Indiana Code section 35-38-1-6. We resolve the issue as a matter of statutory construction and therefore do not reach Hardister's state constitutional claim. For the reasons given below, we conclude that the crime of Class C felony possession of cocaine and a firearm is a lesser included offense of Class A felony dealing. Therefore the conviction for Class C possession of cocaine and a firearm cannot stand.

Some crimes are defined such that a circumstance is not an element of the crime, but can enhance the penalty. See Mathews v. State, __N.E.2d__ (Ind. 2006) (citing Kelly v. State, 539 N.E.2d 25, 26 (Ind. 1989)). We conclude that possession of cocaine is this type of crime. Indiana Code section 35-48-4-6(a) (2004)[2] defines the actus reus of the crime as the act of possession. Subsection (a) defines the base crime—the knowing or intentional possession of cocaine—as a Class D felony. Subsection (b) provides that the crime is elevated to a Class C felony if "the person was also in possession of a firearm." Subsection (b) also provides that the base crime is elevated to a Class B or A felony if other circumstances, not applicable here, are present. These circumstances are enumerated in subsection (b) (the amount of drug involved; possession on a school bus; proximity to schools, parks, housing complexes, and youth centers), and are factors that enhance the punishment for the possession but do not establish separate crimes. The additional circumstance relied on here—possession of a firearm—is of course a fact necessary to conviction of the elevated crime, and therefore must be found by a jury under Apprendi v. New Jersey, 530 U.S. 466, 476 (2000). In that limited sense, possession of a firearm is an "element"

---

[2] For purposes of this opinion, the current statute is the same as the statute in effect at the time of Hardister's 2000 crime. Possession of a firearm was added as an enhancing factor in 1999. See Ind. P.L. 188-1999 § 7.

11

of the elevated crime. But because possession of a firearm serves only to enhance the penalty for Class D possession of cocaine that is committed without possession of a firearm, possession of a firearm does not establish a separate crime.

The dealing statute has a similar statutory structure to the arson statute we recently addressed in Mathews. See Mathews,__N.E.2d at __. Indiana Code section 35-48-4-1 (2004)[3] provides:

> (a) A person who:
>     (1) knowingly or intentionally:
>         (A) manufactures; . . . .
>             cocaine . . .  or
>     (2) possesses, with intent to:
>         (A) manufacture; . . .
>             cocaine . . .
> commits dealing in cocaine . . . a Class B felony, except as provided in
> subsection (b).
> (b) The offense is a Class A felony if:
>     (1) the amount of the drug involved weighs three (3) grams or more; . . .

Like the arson statute examined in Mathews, the dealing statute does not simply create a base crime to which elevated penalties are attached for various consequences. Rather, the statute defines B felony dealing by alternative sets of elements that include possession with intent to manufacture or deliver (section (a)(2)(A) and (C)). Subsection (b) provides that the Class B felony is enhanced to a Class A felony if any one of three additional sets of circumstances are present. In the present case, the State charged Hardister with Class A felony dealing by charging that "the amount of the drug involved weighs three (3) grams or more." Thus, possession with intent to deliver is a B felony, but if it involves more than three grams, it elevates to a Class A felony, which does not constitute a separate crime.

Indiana Code section 35-38-1-6 provides that where a defendant is found guilty of both a greater and a lesser included offense, judgment and sentence may not be entered on the lesser included offense. An offense is inherently included in another offense if the lesser offense may be established "by proof of the same material elements or less than all the material elements" de-

---

[3] For purposes of this opinion, the current statute is the same as the statute in effect at the time of Hardister's 2000 crime.

fining the "greater" offense charged. I.C. § 35-41-1-16(1). For these purposes, simple posses-sion of cocaine is therefore a lesser included offense of dealing as a B felony (possession with intent to deliver) and both are lesser included offenses of Class A dealing (possession of three grams with intent to deliver).[4]

In sum, Hardister's Class A felony conviction for dealing remains, along with obstruction of justice. The gun possession charges are not supported by sufficient evidence and the posses-sion charge is a lesser included offense.

## IV. *Batson* Challenge

At trial Hardister argued that the State improperly exercised its peremptory challenges to strike African-American jurors from the potential jury pool in violation of Batson v. Kentucky, 476 U.S. 79 (1986). On appeal, Hardister argues that the trial court erred in summarily denying his Batson challenge without first requiring the prosecution to come forward with a race-neutral explanation for its use of peremptory strikes. A Batson claim triggers a burden shifting analysis. First, the defendant must make a prima facie showing that the prosecutor exercised peremptory strikes based on race. Id. at 96-98. A prima facie showing requires the defendant to show that peremptory challenges were used to remove members of a cognizable racial group from the jury pool and that the facts and circumstances raise an inference that the removal was because of race. Brown v. State, 751 N.E.2d 664, 667 (Ind. 2001) (citing Williams v. State, 700 N.E.2d 784, 786 (Ind. 1998)). Only after a prima facie showing is made does the burden shift to the prosecution to provide a race-neutral explanation. Id.

The only evidence Hardister presented in support of his Batson challenge was that the State exercised five of six peremptory challenges to strike potential African-American jurors. The record also discloses that the State did not strike two remaining African-American jurors, one of whom was struck by the defense. Standing alone the removal of some African-American

---

[4] Hardister also argues that obstruction of justice and possession of a firearm by a serious violent felon are each the same crime as Class C felony possession of cocaine and a firearm because all three crimes in-volve the same cocaine and the same weapons. Because the Class C possession of cocaine conviction must be reversed, we need not reach this issue. We do not agree, however, that enhanced Class C posses-sion of cocaine is the same crime as obstruction of justice or possession of a firearm by a serious violent felon merely because all three crimes involve the same drugs and weapons.

13

jurors by peremptory challenge does not raise an inference of discrimination. McCormick v. State, 803 N.E.2d 1108, 1111 (Ind. 2004) (citing Kent v. State, 675 N.E.2d 332, 340 (Ind. 1996)). Because Hardister did not establish a prima facie case, the burden never shifted to the prosecution to provide a race-neutral explanation. Accordingly, the trial court's failure to require the State to provide an explanation was not error.

## V.  Trial Court Disclosure of Prior Felony Conviction

Hardister argues that the trial court erred when it advised the jury that Hardister had been convicted of theft in the process of instructing the jury on unlawful possession of a firearm by a serious violent felon. Hardister had stipulated to a qualifying prior felony conviction, and the State had filed an amended charging information substituting the fact of conviction for a description of the qualifying felony. The judge first read this form of charging information, which did not reflect the stipulation:

> Count 5, unlawful possession of a firearm by a serious violent felon Class B felony. Albert Hardister had been previous convicted of Theft[5] under the Indiana code 354745, did on or about December 5th 2000 knowingly and intentionally possess a firearm that is a handgun and a shotgun.

The trial judge then read this preliminary instruction that did implement the stipulation:

> The parties have agreed and stipulated that Defendant Albert Hardister has a [qualifying conviction]. No further proof will be introduced in this case. You are instructed that you are to consider such fact as true and proven beyond a reasonable doubt.

Where status as a felon is an element of the crime charged and the defendant stipulates to his status as a felon, admission into evidence of the full record of a defendant's prior felony conviction is an abuse of discretion under Indiana Rule of Evidence 403. Sams v. State, 688 N.E.2d 1323, 1325 (Ind. Ct. App. 1997), trans. denied (adopting the rule announced in Old Chief v. United States, 519 U.S. 172, 191-92 (1997)). However, we find that any error committed by the trial court in disclosing the nature of Hardister's prior felony conviction was harmless. There was no other reference to the prior felony during the trial and therefore no substantial likelihood

---

[5] The trial judge's statement is inaccurate. Hardister has a prior conviction for felony burglary, not theft.

that the trial court's reference to the prior conviction materially influenced the verdict in view of the evidence supporting Hardister's conviction.

## VI.  Consecutive Sentencing

The State concedes that the consecutive sentences as imposed by the trial court violated Indiana Code section 35-50-1-2 and must be revised to fifty-five years.  We agree that this statute applies, but after reversal of the Class B felony, the sentences imposed by the trial court total fifty-three years and are not capped by Indiana Code section 35-50-1-2.

With exceptions not applicable here, this statute provides that the consecutive sentence arising out of a single "episode" of criminal conduct may not exceed the advisory sentence for a felony one class higher than the most serious of the felonies for which the defendant is convicted.  Ind. Code § 35-50-1-2(c) (2004).  The most serious felony for which Hardister was convicted was Class A felony dealing cocaine.  At the time of the offense, the advisory (then presumptive) sentence for murder, the next higher class of felony, was fifty-five years.  I.C. § 35-50-2-3.  The trial court sentenced Hardister consecutively on the dealing, unlawful possession of a firearm by a serious violent felon, and obstruction of justice counts for a total executed sentence of sixty-eight years.  After eliminating the Class B felony, the sentence is reduced to fifty-three years.  Because this sentence does not exceed the sentence permitted by section 35-50-1-2, we revise Hardister's executed sentence to fifty-three years.

## Conclusion

The judgment and sentence for Class C felony possession of cocaine and a firearm and Class B felony possession of a firearm by a serious violent felon is reversed.  The remainder of Hardister's convictions is affirmed.  Hardister's sentence is revised to fifty-three years.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.