Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2014, 9:09 am

CLERK
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM BALLENTINE, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1402-CR-84 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-0912-FC-00028

**October 23, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a jury trial, William Ballentine ("Ballentine") was convicted in Elkhart Superior Court of Class C felony possession of cocaine and Class A misdemeanor possession of marijuana and sentenced to six years executed in the Department of Correction. Ballentine appeals and presents two issues for our review:

I. Whether the State presented evidence sufficient to support Ballentine's conviction, and

II. Whether the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.[1]

## Facts and Procedural History

On December 1, 2009, Detective Jeremy Stout ("Detective Stout") of the Elkhart County Sheriff's Department was on patrol, traveling eastbound on the Indiana Toll Road. After he observed five or six vehicles traveling in a cluster westbound toward the city of Gary, he turned his cruiser around and pulled behind the group of cars. Shortly thereafter, one of the vehicles, a gray minivan, began to slow down from a speed of around seventy miles per hour to around sixty miles per hour. Detective Stout could see the van's driver, later identified as Ballentine, watching Detective Stout in the van's side mirror. Eventually, the van began to follow within a single car length of a semi truck that was also traveling in the westbound lanes. Recognizing this driving behavior to be a traffic violation, Detective Stout stopped the van.

---

[1] We held oral argument in this appeal on September 23, 2014, at East Noble High School in Kendallville, Indiana. We extend our gratitude to the faculty, staff, and students for their hospitality and commend counsel for the quality of their written and oral advocacy.

As Detective Stout approached the van on the passenger side, he observed that Ballentine was the only occupant of the van. He also noticed that there were two air fresheners hanging from the van's rear view mirror. Through the passenger side window, Detective Stout asked Ballentine, who was visibly nervous, to exit the vehicle for officer safety purposes. He then requested and received Ballentine's permission to retrieve the van's Vehicle Identification Number ("VIN"). As Detective Stout opened the van's driver's side door, he noticed the strong odor of burnt marijuana. Detective Stout then radioed for backup. When the backup officer arrived a few minutes later, Detective Stout questioned Ballentine about the marijuana odor. Ballentine told Detective Stout that the van belonged to his brother's girlfriend and that she had probably smoked marijuana in it.

Detective Stout opened the van's front passenger door and immediately noticed that the carpeting had been pulled away from the door trim on the floor. He pulled back the carpeting and discovered a handgun hidden underneath. The handgun contained four rounds in the magazine and one in the chamber and was within reach of the driver from the driver's seat. At this point, Detective Stout returned to where Ballentine was standing with the other officer, placed him in handcuffs, and read him his Miranda rights. Detective Stout asked Ballentine if he was nervous and Ballentine responded that he was nervous, "because you found the gun in my car." Tr. p. 88. Detective Stout then continued his search of the van. Near where the gun had been hidden, he discovered a digital scale with white residue that was later determined to be cocaine residue, a clear plastic bag containing $1,753 in cash, and a bag containing a small amount of marijuana. Detective Stout also found three cell phones in the van, a piece of notebook paper

3

containing what appeared to be a ledger reflecting several different sales, and a paper bag filled with empty plastic baggies. Detective Stout also observed that several screws were missing from the plastic molding on the interior of the van's rear hatch.

Detective Stout transported Ballentine to the jail, during which time Ballentine asked Detective Stout three or four times about the procedure to follow to have the cash that was found in the van returned to him. Ballentine refused, however, to admit to Detective Stout that the cash belonged to him.

On December 7, 2009, the State charged Ballentine with Class C felony possession of cocaine, Class A misdemeanor possession of marijuana, and Class A misdemeanor carrying a handgun without a license. The State eventually dismissed the handgun charge. After several continuances, a jury trial was held on December 9 and December 10, 2013. The jury found Ballentine guilty of Class A felony possession of cocaine and Class A misdemeanor possession of marijuana.

The trial court held a sentencing hearing on January 9, 2014. At the hearing, the court considered Ballentine's criminal history, which included prior convictions for felony possession of controlled substances and for misdemeanor attempted resisting arrest, to be an aggravator. It also found to be an aggravating circumstance that Ballentine was released on bond for a previous drug charge at the time he committed the instant offenses. The trial court considered to be mitigating circumstances the hardship incarceration would cause on Ballentine and his family and the relatively small amounts of drugs found in the van. The trial court sentenced Ballentine to six years executed in

4

the Department of Correction for the possession of cocaine count and nine months incarceration for the possession of marijuana count, to be served concurrently.

Ballentine now appeals.

## I. Sufficiency of the Evidence

Ballentine first argues that the State presented insufficient evidence to support his convictions for possession of cocaine and possession of marijuana. When considering a challenge to the sufficiency of evidence to support a conviction, we respect the fact-finder's exclusive province to weigh conflicting evidence and therefore neither reweigh the evidence nor judge witness credibility. McHenry v. State, 820 N.E.2d 124 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and "must affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" Id. at 126 (quoting Tobar v. State, 740 N.E.2d 109, 111-12 (Ind. 2000)).

To convict Ballentine of Class C felony possession of cocaine, the State was required to prove beyond a reasonable doubt that Ballentine knowingly or intentionally possessed cocaine. See Ind. Code § 35-48-4-6. To convict Ballentine of Class A misdemeanor possession of marijuana, the State was required to prove that Ballentine knowingly or intentionally possessed marijuana in an aggregate weight of less than thirty grams. See Ind. Code § 35-48-4-11.

A conviction for possession of a controlled substance may rest upon proof of either actual or constructive possession. See Britt v. State, 810 N.E.2d 1077 (Ind. Ct.

5

App. 2004). "Actual possession occurs when the defendant has direct physical control over the item, while constructive possession involves the intent and capability to maintain control over the item even though actual physical control is absent." Id. at 1082. Here, the State alleged constructive possession.

Evidence of constructive possession is sufficient where the State proves that the defendant had both the intent and capability to maintain dominion and control over the contraband. Hardister v. State, 849 N.E.2d 563 (Ind. 2006). The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. Goliday v. State, 708 N.E.2d 4 (Ind. 1999). This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. Id. These additional circumstances may include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. Hardister v. State, 849 N.E.2d 563. The capability element of constructive possession is met when the State shows that the defendant was able to reduce the controlled substance to the defendant's personal possession. Goliday v. State, 708 N.E.2d 4.

Ballentine argues that he did not constructively possess the cocaine and marijuana because he did not have exclusive possession of the van or the items inside it, noting that the van was registered to a Cassandra McBride, not to Ballentine. Ballentine also

6

emphasizes that he denied to Detective Stout that the drugs and contraband found in the van belonged to him. Ballentine argues that the facts of this case are similar to those in Brent v. State, 957 N.E.2d 648 (Ind. Ct. App. 2011). In Brent, this court concluded that the evidence was insufficient to support a car passenger's conviction for possession of marijuana, either actual or constructive, where the officers detected the odor of marijuana and saw marijuana thrown from the car, but the State failed to present evidence that the marijuana was thrown from the passenger side window, the passenger did not have exclusive possession of the car since another person was present inside the car, there was no other evidence tending to incriminate the passenger, and the suspicious driving behavior of the car could not be attributed to the passenger.

The present case is easily distinguishable from Brent. Unlike the passenger in Brent, Ballentine was the only person in the van at the time the drugs were discovered and therefore had exclusive possession of the van, regardless of whether the van was registered to him or to another person. Therefore, the evidence supports an inference that Ballentine had the intent and capability to maintain control and dominion over the drugs. See Goliday v. State, 708 N.E.2d 4 (Ind. 1999) (holding that sufficient evidence established that defendant had constructive possession of marijuana found in car and cocaine found in trunk of car, despite fact that defendant did not own car, where defendant was only person in car when police stopped it, defendant had been living out of vehicle, and clothes found in trunk near the cocaine belonged to defendant); see also State v. Emry, 753 N.E.2d 19, 22 (Ind. Ct. App. 2001) ("Since Emry had exclusive

7

control over the vehicle, it was proper for the jury to infer that Emry had the intent and capability to exert dominion and control over the marijuana.").

Furthermore, unlike the passenger in Brent, none of Ballentine's suspicious behaviors can reasonably be attributed to any other person. Ballentine was visibly nervous during the traffic stop. Detective Stout observed a strong odor of burnt marijuana, air fresheners scattered throughout the van, and various items of contraband, the empty baggies and the apparent ledger of sales, in plain sight from where Ballentine sat in the driver's seat, making it unlikely that another person placed those items in the van without Ballentine's knowledge. From this evidence, a reasonable juror could conclude that Ballentine had knowledge of the presence of the drugs and had the capability and the intent to maintain control over the cocaine and marijuana. Ballentine's arguments amount to a request that we reweigh the evidence, which we will not do. See McHenry, 820 N.E.2d 124. We therefore conclude that the State presented sufficient evidence to support Ballentine's convictions for possession of cocaine and possession of marijuana.

## II. Inappropriate Sentence

Ballentine next argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, the principal role of our review should be to attempt to level

8

the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. Fernbach v. State, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), trans. denied (citing Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008)).

Also, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. Fonner v. State, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Here, Ballentine has failed to meet this burden.

Ballentine was convicted of a Class C felony and a Class A misdemeanor. The sentencing range for a Class C felony is two to eight years, with four years being the advisory sentence. See Ind. Code § 35-50-2-6. The sentencing range for a Class A misdemeanor is up to one year. See Ind. Code § 35-50-3-2. Here, the trial court imposed a sentence of six years for Ballentine's Class C felony conviction and a sentence of nine months for his Class A misdemeanor conviction, to be served concurrently. With this in mind, we turn to Ballentine's claim that his sentence is inappropriate.

Considering the nature of the offense, Ballentine seeks to minimize his culpability by emphasizing that he cooperated with Detective Stout, that he did not attempt to flee the scene, and that only a small amount of drugs was found inside the van. However, we note that, although the amount of drugs found in the van was relatively small, a large amount of cash was found in its place, along with what appeared to be a ledger of sales and other contraband items, all of which support a reasonable inference that Ballentine was returning home after having exchanged drugs for cash. See Jennings v. State, 553 N.E.2d 191 (Ind. Ct. App. 1990) (concluding that evidence supporting forfeiture of money and automobile allegedly used in drug trafficking was not impermissibly based upon an inference built on an inference; presence of money in quantities normally associated with drug transactions led to inference that money was so used). We therefore conclude that Ballentine's sentence is not inappropriate in light of the nature of the offenses.

As for Ballentine's character, the evidence shows that he has a prior felony conviction for possession of a controlled substance in Illinois. He received probation for that conviction, which he failed to successfully complete. He was convicted for attempted resisting arrest. He has also been charged with the following misdemeanors: driving while suspended, battery, and resisting arrest. He received a deferred sentence for the driving while suspended conviction, which was ultimately dismissed. The battery and resisting charges were dismissed with leave to reinstate in November 2010. Ballentine was on bond for a felony dealing or manufacturing a controlled substance charge when he committed this crime. Despite Ballentine's repeated contact with the

10

criminal justice system, it is readily apparent that he has not been deterred from criminal conduct. Therefore, we cannot say that the six-year sentence was inappropriate when considering the nature of the offense and Ballentine's character.

## Conclusion

For all of these reasons, we conclude that the State provided sufficient evidence to support Ballentine's convictions for Class C felony possession of cocaine and Class A misdemeanor possession of marijuana. We further conclude that Ballentine has failed to meet his burden on appeal of demonstrating that his sentence of six years is inappropriate in light of the nature of his character and his offense.

Affirmed.

BAILEY, J., and ROBB, J., concur.