# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 22 2016, 5:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam C. Squiller
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Brian W. Ellis,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 22, 2016

Court of Appeals Case No.
17A05-1512-CR-2179

Appeal from the DeKalb Superior Court

The Honorable Kevin P. Wallace, Judge

Trial Court Cause No.
17D01-1405-FA-11

**Barnes, Judge.**

# Case Summary

[1] Brian Ellis challenges his conviction for Class A felony dealing in methamphetamine. We affirm.

# Issue

[2] Ellis presents one issue for our review, which we restate as whether the evidence is sufficient to support his conviction for Class A felony dealing in methamphetamine.

# Facts

[3] On May 25, 2014, Mary Thacker and Mike Avery were working in their backyard in DeKalb County when they heard a loud noise similar to an explosion and saw smoke coming from their neighbor's shed. Thacker saw Ellis and another person near the shed. Thacker and Avery smelled an odor like ammonia, and they alerted the police.

[4] DeKalb County Sheriff's Department Deputies Larry Kees, Jarrid Treesh, and Courtney Fuller responded to Thacker and Avery's report. When they arrived, they spoke with Mable Ellis ("Mable"), Ellis's eighty-two-year-old mother and the property owner, who gave her consent to search. The officers saw a light on inside the shed in the backyard, heard voices, and smelled a chemical odor similar to ammonia. Deputy Treesh knocked on the door to the shed and opened the door. He saw two men seated in chairs, open beer bottles, and a reaction vessel—a plastic bottle containing a white granular substance, black flakes, and a bluish liquid, which the officers recognized as an active meth lab—

between the two chairs. The men were later identified as Ellis and Tyler Cole. Cole told the deputies he was "just there to clean out a garage," and was released. Tr. p. 190. He was later charged with and convicted of possessing methamphetamine. Ellis told Deputy Treesh that Cole was showing him how to manufacture methamphetamine.

[5] From the shed and a garbage can outside the shed, law enforcement officers collected cold packs, Zippo lighter fluid, Coleman camp fuel, Liquid Lightening, coffee filters, battery casings, Kleen Out, blister packs of pseudoephedrine, and a "spent one-pot." Tr. p. 278. They also searched the bedroom in which Ellis and his wife were staying and found drug paraphernalia, including a pipe, a measuring device, and needle nose pliers. On a dresser in the bedroom, officers discovered a credit card bearing Ellis's name amid several "tin foilies," which "are used a lot of times in the smoking of methamphetamine . . . ." *Id.* In the sleeping compartment of Ellis's semi, which was parked at Mable's house, officers found a bag of methamphetamine between the wall of the cab and the mattress.

[6] The State charged Ellis with 1) Class A felony dealing in methamphetamine; 2) Class B felony possession of methamphetamine; 3) Class C felony possession of precursors; and 4) Class D felony possession of paraphernalia. A jury found Ellis guilty of dealing in methamphetamine and possession of

methamphetamine[1] and found him not guilty of possession of paraphernalia. The jury was unable to reach a verdict on the possession of precursors charge. The trial court sentenced Ellis to twenty years for dealing in methamphetamine concurrent with six years for possessing methamphetamine for an aggregate sentence of twenty years in the Department of Correction.

## Analysis

[7] Ellis contends the evidence is not sufficient to support his conviction for dealing in methamphetamine because there is no direct evidence he was involved in manufacturing the drug.[2]

> When reviewing a claim of insufficient evidence, an appellate court considers only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict. We do not reweigh the evidence or judge the credibility of witnesses. These evaluations are for the trier of fact, not appellate courts. In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented.

[1] Ellis does not challenge his conviction for possession of methamphetamine.

[2] Ellis also contends his argument regarding the sufficiency of the evidence is "supported by the fact that the jury was unable to conclude that the State proved its case against Ellis for Possession of Precursors With the Intent to Manufacture Methamphetamine beyond a reasonable doubt." Appellant's Br. p. 11. Ellis candidly concedes, however, that "logically inconsistent verdicts are not a basis in Indiana for vacating a conviction." *Id.; See Beattie v. State*, 924 N.E.2d 643, 644 (Ind. 2010) (holding "inconsistent verdicts are permissible and not subject to appellate review . . . .").

*Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (quotations omitted) (citations omitted).

[8]     The statute in effect at the time Ellis committed these crimes defined dealing in methamphetamine as knowingly or intentionally manufacturing methamphetamine, pure or adulterated. Ind. Code § 35-48-4-1.1. The offense is a Class A felony if, as here, it is committed in, on, or within 1000 feet of a public park or a family housing complex.[3] *Id.*; App. p. 14. Indiana Code Section 35-48-1-18 defines "manufacture" as:

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical syntheses, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

[9]     Constructive possession of items used to manufacture methamphetamine is sufficient to prove an appellant knowingly or intentionally manufactured the drug. *See Floyd v. State*, 791 N.E.2d 206 (Ind. Ct. App. 2003), *trans. denied* (citing *Bush v. State*, 772 N.E.2d 1020, 1022-23 (Ind. Ct. App. 2002)), *trans. denied*). "A person constructively possesses an item when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to

---

[3] Ellis does not challenge the enhancement to a Class A felony.

maintain dominion and control over it." *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015) (citation omitted).

> Where a person's control over the premises where contraband is found is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband. Additional circumstances may include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs or weapons; (5) drugs or weapons in plain view; and (6) location of the drugs or weapons in close proximity to items owned by the defendant.

*Hardister v. State*, 849 N.E.2d 563, 574 (Ind. 2006) (citations omitted).

[10] Ellis did not have exclusive control over the areas of Mable's house in which police found the reaction vessel and items commonly used to manufacture methamphetamine. However, Ellis told Officer Treesh he "believed" the bottle was a methamphetamine lab and that Cole was showing him how to manufacture methamphetamine. Tr. pp. 237, 238. Police discovered Ellis sitting with Cole and drinking a beer near the reaction vessel, which was in plain view. Also in plain view in the shed were a number of items commonly used to manufacture methamphetamine—a grinder coated with white residue, Colman camping fuel, Liquid Fire, salt, tape, and tubes, blister packs of pseudoephedrine, and battery casings. Police also discovered a bag of methamphetamine in the sleeping area of semi in which Ellis essentially lives for sometimes weeks at a time.

[11]    It is clear that Ellis knew of the presence of the reaction vessel; he told police he believed it was methamphetamine.  The jury could reasonably infer Ellis was capable of maintaining dominion and control over the reaction vessel and items used to manufacture methamphetamine based on his proximity to them.  Likewise, the jury could reasonably infer from Ellis's statement that Cole was showing him how to manufacture methamphetamine and his proximity to both the reaction vessel and the items used to manufacture methamphetamine that he had the intent to maintain dominion and control over those items.  This evidence was sufficient to prove Ellis had constructive possession of the reaction vessel and the items frequently used to manufacture methamphetamine and, therefore, is sufficient to support his conviction.

[12]    Ellis argues that both he and Cole testified Ellis was not involved in manufacturing methamphetamine and directs us to his own self-serving testimony that Cole, not Ellis was responsible for the contraband.  "The jurors are the triers of fact, and in performing this function, they may attach whatever weight and credibility to the evidence as they believe is warranted." *Parks v. State*, 734 N.E.2d 694, 700 (Ind. Ct. App. 2000), *trans. denied*.  We may not reweigh the evidence. *Baker*, 968 N.E.2d at 229.

## Conclusion

[13]    The evidence is sufficient to support Ellis's conviction for Class A felony dealing in methamphetamine.  We affirm.

[14]    Affirmed.

Riley, J., and Bailey, J., concur.