## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2018, 9:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Lamons Robinson, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | April 25, 2018 <br><br> Court of Appeals Case No. 49A02-1711-CR-2590 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Grant W. Hawkins, Judge <br><br> Trial Court Cause No. 49G05-1612-CM-48638 |

**Najam, Judge.**

# Statement of the Case

[1] Michael Lamons Robinson, Jr. appeals his conviction, following a bench trial, for carrying a handgun without a license, as a Class A misdemeanor. He raises one issue on appeal, namely, whether the State presented sufficient evidence to support his conviction.

[2] We affirm.

# Facts and Procedural History

[3] On December 22, 2016, an individual called the Indianapolis Metropolitan Police Department ("IMPD") to file a report that gunshots had been fired in the 1900 block of North LaSalle Street. Victoria Robinson, who lives in that area and is Robinson's sister, heard the same gunshots. Victoria called Robinson and asked him to come over. After Robinson had arrived, Robinson and Victoria got into Victoria's company car with her infant child and left the area. Victoria drove the car, and Robinson was in the front passenger seat.

[4] IMPD Officer Cameron Taylor responded to the report that gunshots had been fired, and he arrived on the scene approximately two minutes later. Officer Taylor observed Victoria's vehicle leaving the area. Victoria failed to stop at a stop sign and failed to properly use her turn signal, so Officer Taylor conducted a traffic stop. Victoria reported to Officer Taylor that she had heard the gunshots and that they were leaving the area for their safety.

[5] Officer Taylor observed that Robinson, with whom Officer Taylor had had previous encounters, "was looking around, he seemed to be breathing heavily, was very attentive," and was "absorbing [his] surroundings more." Tr. Vol. II at 10-11. Officer Taylor also noticed that Robinson was "more nervous than usual." *Id*. at 11-12.

[6] A few minutes after Officer Taylor had arrived, IMPD Officers Simone Willis and William Wogan also arrived at the scene. Officer Willis exited her vehicle and went to stand by the driver's side of Victoria's vehicle. At that point, Officer Taylor asked Victoria to exit the vehicle and speak with him about the gunshots she had heard so that Officer Taylor could write a report. After Victoria exited the vehicle, Officer Willis had an unobstructed view of Robinson and could see Robinson "completely." *Id*. at 27.

[7] Officer Willis observed that Robinson "had his left hand tucked in between the center console and the passenger seat and he had his body and right arm leaned over [t]o where I couldn't see his left hand." *Id*. at 29. At that point, Officer Willis asked Robinson to place both of his hands in his lap. Robinson initially complied, but he "leaned back over again, tucked his hand back down to the passenger side console" and he tried to look out of the back of the car. *Id*. Officer Willis again asked Robinson to place his hands where Officer Willis could see them. Robinson yet again placed his hands down between the passenger seat and the center console. Based on Officer Willis' experience, she believed Robinson "was trying to conceal something[.]" *Id*.

[8] Officer Willis signaled to Officer Wogan, who was standing on the passenger side of the vehicle, that Robinson was not listening to her. Officer Wogan had also noticed that Robinson, with whom he had had "quite a few" previous interactions, "appeared to be visibly nervous." *Id*. at 37. After Officer Wogan heard Officer Willis ask Robinson to show his hands for the second or third time, Officer Wogan asked Robinson to step out of the vehicle. Robinson did not comply, and Officer Wogan ultimately had to pull him to get him to leave the vehicle. Officer Wogan placed Robinson in handcuffs.

[9] At that point, Victoria, with permission from the officers, went to the rear passenger door of the vehicle so that she could remove her baby. After she removed her baby, she left the door open and went to stand near Robinson. With the door to the vehicle open, Officer Wogan was able to see a handgun underneath Robinson's seat. After obtaining Victoria's consent to search her vehicle, Officer Wogan confirmed that the item under Robinson's seat was a handgun. Officer Wogan also noticed that the only other object under Robinson's seat was a coin. Officer Taylor confirmed that Robinson did not have a license to carry a handgun.

[10] The State charged Robinson with one count of carrying a handgun without a license, as a Class A misdemeanor, and one count of resisting law enforcement, as a Class A misdemeanor. On October 13, 2017, the trial court held a bench trial. During the trial, Victoria testified that she does not own a handgun and did not place a handgun inside the vehicle. She further testified that, in the month and a half prior to the incident, she had not had any other passengers in

her vehicle besides Robinson and her baby. The court found Robinson guilty of carrying a handgun without a license but not guilty of resisting law enforcement. The court sentenced Robinson to 180 days, all suspended to nonreporting probation. This appeal ensued.

## Discussion and Decision

[11] Robinson contends that the State failed to present sufficient evidence to support his conviction. Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the [judgment]. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[12] Indiana Code Section 35-47-2-1(a) (2018) provides in relevant part that "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun." In order to satisfy these elements, "the State must prove the defendant had either actual or constructive possession of the handgun." *Deshazier v. State*, 877 N.E.2d 200, 204 (Ind. Ct. App. 2007). Here, the parties dispute only whether Robinson constructively possessed the gun.

[13] Evidence of constructive possession is sufficient if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband. *Hardister v. State*, 849 N.E.2d 563, 573 (Ind. 2006). There is no question that Robinson had the capability to maintain dominion and control over the firearm inside the car, as it was within his reach. *Holmes v. State*, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003). Thus, we turn to whether a reasonable fact-finder could conclude that Robinson had the intent to possess the firearm.

[14] For such issues, our ultimate question is "whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband." *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016). We have previously enumerated several nonexhaustive factors that the fact-finder might consider where, as here, a defendant's possession of the premises in which the contraband is found is not exclusive. These factors include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs or weapons; (5) drugs or weapons in plain view; and (6) location of the drugs or weapons in close proximity to items owned by the defendant. *Hardister*, 849 N.E.2d at 573.

[15] Here, a reasonable fact-finder could have concluded that Robinson knew of the nature and presence of the firearm under the front passenger seat of the car. Both Officer Wogan and Officer Taylor, who had had numerous previous contacts with Robinson, testified that Robinson was more nervous than usual.

Officer Taylor also testified that Robinson "was looking around, he seemed to be breathing heavily, he was very attentive" and he was "absorbing [his] surroundings more." *Id*. at 10-11. Further, Officer Willis testified that Robinson "had his left hand tucked in between the center console and the passenger seat and he had his body and right arm leaned over [t]o where I couldn't see his left hand." *Id*. at 29. Officer Willis asked Robinson to place his hands where she could see them. Robinson initially complied, but he again placed his hand between the center console and his seat. After the second time that Officer Willis asked Robinson to show his hands, Robinson asked where Officer Wogan was located. Officer Willis testified that "normally people [who] are being squirrely, if you want to say, or looking around trying to see where other officers are, are trying to conceal firearms." *Id*. at 30-31. In sum, Robinson was nervous, he tried to determine where all of the officers were located, he repeatedly put his hand between the seat and the console, and he leaned his body over to the point where officers could no longer see his left hand.

[16] Based on those furtive gestures, Robinson's close proximity to the handgun, and the fact that Officer Wogan could easily see the handgun from outside the vehicle, there is sufficient evidence to support the trial court's conclusion that Robinson constructively possessed the firearm. Robinson's contentions on appeal are merely a request that we reweigh the evidence, which we cannot do. We affirm Robinson's conviction.

[17] Affirmed.

Robb, J., and Altice, J., concur.