**Ricky TOBAR, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 71S00–9909–CR–481.

Supreme Court of Indiana.

Dec. 20, 2000.

Thomas J. LaFountain, South Bend, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Ricky Tobar was convicted of the murders of Keith Canady, James Johnson, and Clester Wallace, Jr. and sentenced to consecutive sentences of sixty-five, fifty-five, and forty-five years, respectively, for a total of 165 years. In this direct appeal, Ricky argues that: (1) the trial court erred in refusing to give a jury instruction on the defense of duress; (2) the evidence was insufficient to convict him; and (3) his sentence is manifestly unreasonable. We affirm the trial court.

**Factual and Procedural Background**

On March 23, 1999, Ricky was at his residence along with several family members and acquaintances, including his cousin, William Tobar. Ricky operated a crack business out of his home and William often acted as the "security guard" in drug sales. At some point after noon, two men arrived to purchase crack cocaine. Jovanna Harris, one of Ricky's friends, stated that it was "her serve" and proceeded to drive with one of the men to an ATM to obtain cash for the sale. The other man, Keith Canady, remained at Ricky's home. Harris returned a short time later, crying, and stated that the man had held a gun to her head and taken her drugs and money.

In response to this news, William punched Canady in the face. Both William and Ricky kicked Canady as he lay on the floor. William then dragged Canady down to the basement, hog-tied him, beat him, and, later that evening, suffocated him by gagging him and securing plastic bags around his neck. William testified that Ricky wanted to shoot Canady, but that William dissuaded him because he thought that a gunshot would be heard by

the neighbors. William also testified that Ricky was "hitting [Canady] and stuff" while Canady was tied in the basement.

Johnson and Wallace arrived about 8:45 p.m. William overpowered Johnson, pistol-whipped him, and tied his hands behind his back as he lay on the floor. Johnson, who knew Ricky because he had dated Ricky's mother, asked Ricky to intervene. According to William, Ricky then forced Wallace to lie down on the floor. As a result of William's beating Johnson with the gun, the bullets flew out of the gun. Ricky reloaded it at William's request. Ricky or William then shot Johnson once in the head and Wallace in the back and chest. Both were killed. William attempted to conceal the crimes by turning on the gas stove, extinguishing the pilot lights, and removing the knobs after pouring kerosene over Canady's body and setting it on fire.

Immediately thereafter, Ricky was observed by a neighbor leaving the house carrying a shoebox and a garbage bag. Ricky convinced a friend to book him a room at a motel. After two nights, he turned himself in to authorities. Ricky and William were convicted of the murders of all three men.

## I. Jury Instruction

■ Ricky argues that the trial court abused its discretion by refusing his jury instruction on the defense of duress. In reviewing a trial court's decision to give or refuse tendered jury instructions, this Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Cutter v. State,* 725 N.E.2d 401, 408 (Ind.2000).

At trial, the trial court declined to give Ricky's tendered jury instruction regard-

ing duress on the ground that there was no evidence of any imminent threat to Ricky. Ricky urges that the trial court abused its discretion in failing to consider that William was a large man and former boxer, that Ricky watched as William beat Canady, and that Ricky knew William to have used crack cocaine and be "in the throes of a crack-induced rage."

Duress is proper as a defense if the person "who engaged in the prohibited conduct was compelled to do so by threat of imminent serious bodily injury." Ind. Code § 35–41–3–8 (1998). Although there was plenty of evidence attesting to William's intimidating size, Ricky never expressed any fear of William to authorities, and there is nothing in the record suggesting Ricky feared his cousin, much less felt threatened by serious bodily injury. Indeed, by his own account Ricky left his home during the course of the crimes to obtain liquor and voluntarily returned. Thus, the trial court did not abuse its discretion in concluding that there was no evidence of duress in the record to support the giving of the instruction.[1]

## II. Sufficiency of the Evidence

■ Ricky argues that the evidence was insufficient to convict him of the murders of Canady, Johnson, and Wallace, even under an accomplice liability theory. He urges that the jury could not have reasonably inferred from the evidence presented at trial that he had anything to do with these murders other than being "in the wrong place at the wrong time."

■ Our standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, *Harrison v. State,* 707 N.E.2d 767, 788 (Ind. 1999), and it lies within the jury's exclusive province to weigh conflicting evidence, *Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998). We will affirm the trial court

1. As the State notes, the Indiana Code also explicitly forbids the use of duress as a defense to an offense against the person, includ-

ing murder. Ind.Code § 35–41–3–8(b) (1998). Ricky does not address this issue.

if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Bunch v. State*, 697 N.E.2d 1255, 1257 (Ind.1998).

In order to be found guilty of murder based on accomplice liability, a jury must find beyond a reasonable doubt that a defendant "knowingly or intentionally aid[ed], induce[d], or cause[d] another person to commit an offense." Ind.Code § 35–41–2–4 (1998). A defendant's mere presence at the crime scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability. *Harris v. State*, 425 N.E.2d 154, 156 (Ind. 1981). These factors, however, may be considered in conjunction with a defendant's course of conduct before, during, and after the crime, and a defendant's companionship with the one who commits the crime. *Id.*

Here, the jury was instructed on accomplice liability and the evidence was sufficient to convict Ricky on that basis. William acted as the "security guard" at Ricky's "crackhouse." There was also at least some evidence of Ricky's direct involvement in the killings. One witness testified that both Ricky and William kicked Canady, and William testified that Ricky beat Canady in the basement. According to testimony at trial, six or more hours elapsed between the time Canady arrived at Ricky's home and Canady's body was set on fire in an attempt to cover up the crimes. Canady was apparently alive for a large portion of that time, but unlike all the other occupants of the house, Ricky never left the scene except to go to the liquor store. Although William's testimony conflicted with his initial statement to authorities, the jury was entitled to credit William's account that he and Ricky discussed how they would kill Canady, and that Ricky hit Canady and inquired, "Man, he ain't dead yet?" The jury could infer that William was acting under Ricky's instructions. If so, the ultimate objective of killing all three was "induced or caused" by Ricky. William testified that it was Ricky who shot Johnson and Wallace. This testimony also conflicted with William's initial statement to authorities, but even if it is discredited, by Ricky's own admission, he reloaded the gun after the bullets flew out of it, and told Johnson, whom he had known since he was thirteen, that there was nothing he could do to help him and that Johnson had gotten himself into the mess with William. Both William and another witness testified that the gun belonged Ricky. Finally, after William attempted to blow up the house, Ricky was seen fleeing the scene with some clothing and personal belongings from his house. He then convinced a friend to find a motel room for him and remained there until he discovered that friends and relatives had spoken to authorities, at which time he turned himself in.

The question of whose testimony to believe was a difficult one to resolve in this case, but that is the role of the jury, and we are not free to supplant the jury's judgment with our own. William initially took responsibility for all three murders, then changed his story and admitted to murdering Canady, but not Johnson and Wallace. Ricky first denied any involvement in or knowledge of the killings, and then later admitted to being present, but little more. In his second statement, Ricky admitted reloading the gun for William, but simultaneously alleged that he had left before anyone was killed, and believed "[William] was going to whoop [them] and let them go." In short, the jury likely found it difficult to believe both Ricky's and William's testimony. Thus, the jury had the unenviable task of resolving conflicting versions of the truth. Here, the evidence was sufficient for the jury to conclude that Ricky, even assuming he was not the killer of any of the three, was guilty beyond a reasonable doubt of aiding the murders by kicking Canady and loading the gun to shoot the other two, or

ordering or causing the murders by directing William to kill the victims.

### III. Manifestly Unreasonable Sentence

Ricky contends that his sentence is manifestly unreasonable in view of his limited involvement in the murders, his youth, and lack of criminal history. Although this Court has the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, it will do so only when the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). This Court's review under Rule 17(B) is very deferential to the trial court: "[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (quoting *Prowell v. State,* 687 N.E.2d 563, 568–69 (Ind.1997)). This standard is the same irrespective of whether the defendant is an accomplice or a principal. *Johnson v. State,* 687 N.E.2d 345, 349 (Ind.1997). As a general rule, multiple killings warrant the imposition of consecutive sentences. *Noojin v. State,* 730 N.E.2d 672, 679 (Ind.2000).

Here, the trial court imposed consecutive sentences of sixty-five, fifty-five, and forty-five years for the murders of Canady, Johnson, and Wallace, respectively. The trial court imposed these sentences based on the "nature of the offense." It elevated Ricky's conviction for Canady's murder based upon the beating and torture Canady endured and the subsequent burning of his body, and imposed the presumptive with regard to Johnson, noting that Johnson was also subjected to a beating before his death. As for the "character of the offender," the trial court noted Ricky's youthful age at the time of the offense (nineteen) as well as his limited past involvement with the law, which consisted of a warning to Ricky when he was nine years old. However, the trial court also noted that the murders came about as a direct result of Ricky's drug business.

We are unable to say that Ricky's sentence is manifestly unreasonable considering the "nature of the offense" and the "character of the offender." Even if his participation was limited, Ricky aided a triple homicide, including a brutal torture. And although it is true that Ricky's criminal history was negligible, as the trial court noted, this does not help make the case that Ricky was a law-abiding citizen in view of his trade as a drug dealer. With regard to Ricky's limited involvement in the murders, this Court is not compelled to find a sentence manifestly unreasonable simply because the weight of the evidence suggests that the defendant's role was that of an accomplice and not a principal. Irrespective of whether Ricky actually pulled the trigger, he reloaded the gun. When Johnson pleaded with Ricky for help after being beaten and tied up, Ricky told him that he had to settle his own score with William and that there was nothing he could do. Moreover, if William's account is credited, Ricky impliedly directed the deaths by asking, "Ain't he dead yet?" In view of these factors, the imposition of consecutive sentences and an enhanced sentence is not "clearly, plainly, and obviously" unreasonable.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs except as to sentence.