**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 16 2014, 9:30 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL A. PARSLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 21A01-1402-CR-69 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FAYETTE CIRCUIT COURT
The Honorable Beth A. Butsch, Judge
Cause No. 21C01-1107-FA-570

**October 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

Paul A. Parsley appeals from his conviction of and sentence for one count of dealing in a controlled substance within 1,000 feet of a public park[1] as a Class A felony, and one count of dealing in a controlled substance[2] as a Class B felony. He contends that there was insufficient evidence to support his convictions and that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Consistent with our standard of review, we affirm Parsley's convictions and sentence.

## FACTS AND PROCEDURAL HISTORY

From January 2011 until June 2011, Cody Tipton worked as a confidential informant for the RUFF[3] Drug Task Force. Tipton approached RUFF Drug Task Force member David Joseph Laughlin, II, of the Fayette County Sheriff's Department, with a list of people from whom he offered to attempt to make controlled buys, in exchange for payment as a confidential informant, and to potentially have felony charges filed against him dismissed. Although the task force typically researched the criminal history of potential informants prior to proceeding with a controlled buy, Tipton was immediately allowed to make a controlled buy because Officer Laughlin was familiar with Tipton's background. Officer Laughlin had known Tipton for approximately seven or eight years having met while Tipton was a high school student and Officer Laughlin was a school

---

[1] Ind. Code § 35-48-4-2(b) (2011).

[2] Ind Code §35-48-4-2(a) (2011).

[3] RUFF is an acronym for Rush, Union, Fayette, and Franklin counties, and the acronym was retained after the drug task force counties consisted only of Rush County and Fayette County.

security officer. During the time Tipton served as a confidential informant, he made approximately thirty-six controlled buys.

One of the people on Tipton's list was Parsley, an individual Officer Laughlin had known for a number of years. On January 14, 2011, Tipton called Parsley and told him that he needed a fix for a backache. Officer Laughlin met Tipton at Baptist Temple where Tipton and his vehicle were searched before and after he was equipped with a recording device. Tipton then drove to Parsley's grandfather's house, where Parsley was living, while Officer Laughlin followed behind. The house, which was occupied by Parsley and other family members, was located at the intersection of 11th Street and Grand Avenue.

When Tipton arrived at the house, he exited his own vehicle and got into the backseat of another vehicle driven by Parsley. Also present in the car, sitting in the front passenger seat, was Stephanie Ketcham, Parsley's girlfriend. Parsley drove his vehicle down a nearby alley on 12th Street, where he bought three oxycodone pills weighing 30 milligrams each. While Parsley was purchasing the drugs, Tipton and Ketcham discussed Parsley specifically and Ketcham's concern about Parsley's lifestyle. After Parsley returned to and entered his vehicle, he handed Tipton what Ketcham identified as oxycodone pills. Parsley then returned to his grandfather's house, Tipton got back into his own vehicle, and Officer Laughlin and Tipton returned to Baptist Temple. Tipton had the three oxycodone pills and told Officer Laughlin, for purposes of making a post-buy statement, about the events that had taken place.

Later, on May 18, 2011, Tipton met with Officer Laughlin at Smalley's Pond to conduct another controlled buy from Parsley. On this occasion, the same search procedure

3

was followed prior to and after equipping Tipton with recording equipment. Tipton drove to Jennifer Bramer's home to meet Parsley. Tipton asked Parsley for Lortabs, also known as oxycodone hydrochloride, and they agreed to meet at Parsley's grandfather's house. While Tipton drove to Parsley's grandfather's house, Parsley in another car went to another house to retrieve the Lortabs. Parsley arrived with the drugs and handed them to Tipton. Tipton then left Parsley's house and met with investigating officers at a nearby ballpark where he gave them the evidence, five Lortabs, ten milligram pills, and was searched for contraband.

Subsequent laboratory analysis confirmed that the pills Parsley delivered to Tipton contained oxycodone. Mike Bottomley, Superintendent of Parks and Recreation for the City of Connersville, testified that Industrial Park was a neighborhood park maintained by the city and included a playground, basketball courts, and a softball diamond. Fayette County Surveyor Jerry Gobin measured the distance between Industrial Park and Parsley's grandfather's house. He found that it was 870 feet from the southwest corner of the lot on which the house sits to the eastern edge of Industrial Park. He further testified that the entire lot on which Parsley's grandfather's house sits is within 1,000 feet of Industrial Park.

The State charged Parsley with the two offenses, and, after a jury trial, he was convicted of one count of dealing in a controlled substance within 1000 feet of a park as a Class A felony, and dealing in a controlled substance as a Class B felony. The trial court sentenced Parsley to forty years for the Class A felony offense, and to a twelve-year concurrent sentence for the Class B felony offense. Parsley now appeals.

DISCUSSION AND DECISION

4

Parsley argues that there is insufficient evidence to sustain his convictions. Our standard of review of such claims is well settled. "In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses." *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id*. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id*. "It is therefore not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)).

First, Parsley contends that the evidence supporting the Class A felony is insufficient because the county surveyor measured the distance between the wrong locations. He claims that Gobin's testimony does not support the jury's verdict because there were two addresses for Parsley's property.

The evidence most favorable to the jury's verdict established through Detective Laughlin's testimony that there were two addresses for Parsley's residence because it was located at the corner of West 11th Street and Grand Avenue. Detective Laughlin testified that the West 11th Street address for Parsley's residence was 200 ½ West 11th Street. The Grand Avenue address was 1101 North Grand Avenue. Tipton testified that Parsley's residence was located at 200 ½ West 11th Street. Gobin testified that he measured from Industrial Park to 200 ½ West 11th Street. Thus, Parsley's argument that Gobin measured the distance from an incorrect address fails. Parsley was able to cross-examine the

witnesses about their testimony regarding the addresses. We will not reweigh the evidence here and we find the evidence sufficiently establishes that the distance between the correct locations was measured.

Next, Parsley argues that the evidence fails to establish that the transaction took place within 1000 feet of Industrial Park because Gobin measured from the southwest corner of the lot and not the driveway, the location where the transaction occurred. Gobin, the Fayette County Surveyor, measured the distance between Industrial Park and Parsley's property by using a Geographical Information System. That system uses photography of the land to measure distances between points. Gobin testified that the distance between the southwest corner of the lot the house sits on to the eastern edge of Industrial Park was 870 feet. He further testified that the entire lot on which Parsley's residence was situated was within 1000 feet of Industrial Park. Gobin stated that his testimony was based upon measurements he took in the case in addition to his training and experience and knowledge of the area. The jury was in the best position to assess Gobin's testimony. We will not reweigh the evidence or reassess Gobin's credibility. The evidence was sufficient in this regard.

Parsley further challenges the sufficiency of the evidence supporting his convictions by invoking the incredible dubiosity doctrine. When considering a challenge to the sufficiency of evidence supporting a conviction, we neither reweigh the evidence nor judge witness credibility. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Under this review we respect "the jury's exclusive province to weigh conflicting evidence." *Id*. (quoting *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001)). Considering only the probative

6

evidence and reasonable inferences supporting the verdict, we must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (quoting *Tobar v. State*, 740 N.E.2d 109, 112 (Ind. 2000)).

"Within the narrow limits of the 'incredible dubiosity' rule, a court may impinge upon a jury's function to judge the credibility of a witness." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). For testimony of a sole witness to be disregarded based on a finding of "incredible dubiosity," it must be inherently contradictory, wholly equivocal, or the result of coercion. *Id.* Moreover, there must also be a complete lack of circumstantial evidence of the defendant's guilt. *Id.* This rule is rarely applicable. *Id.*

Instead of citing to inherently contradictory statements within Tipton's testimony, or contradictions between the statements of various witnesses, Parsley invites us to reweigh the evidence and reassess the credibility of the witnesses. Our standard of review prohibits us from engaging in that task. Consistent with our standard of review, however, we conclude that the evidence supporting the jury's verdict is sufficient. Ketcham testified that she saw Parsley hand pills, she identified as oxycodone, to Tipton. That transaction was corroborated by videotape and testimonial evidence. In the audio recording of a telephone call in which Parsley participated he acknowledged that he was caught on camera going somewhere else to obtain drugs. Detective Laughlin testified about the procedures used before and after Tipton was equipped with recording equipment and about the results of the surveillance of those transactions and the evidence gathered.

7

Parsley was afforded the opportunity to cross-examine Tipton and was able to expose his use of controlled substances, which persisted through the period he served as a confidential informant, in challenging his credibility. At that point, it was the jury's task to evaluate the credibility of the witnesses. This is not one of those rare occasions where we must impinge on the function of the jury. The evidence is sufficient to support both convictions.

## II.

Parsley also challenges the appropriateness of his sentence. The Indiana Constitution authorizes independent appellate review and revision of a sentence, authority implemented through Appellate Rule 7(B). *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007). The Rule provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Id*. (quoting Ind. Appellate Rule 7(B)). "The burden is on the defendant to persuade" the appellate court that his or her sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

Parsley was convicted of a Class A felony offense and a Class B felony offense. At the time he committed his offenses, Indiana Code section 35-50-2-4 (2005) provided for a sentencing range of between twenty years and fifty years executed with an advisory sentence of thirty years for a Class A felony conviction. Indiana Code section 35-50-2-5 (2005) provides for a sentencing range of between six years and twenty years with an

advisory sentence of ten years for a Class B felony conviction. Here, the trial court imposed a sentence of forty years for Parsley's Class A felony conviction and imposed a sentence of twelve years on his Class B felony conviction to be served concurrently.

Parsley argues that his sentence is inappropriate when compared to the sentencing scheme which became effective on July 1, 2014. This contention is unpersuasive because "the sentencing statute in effect at the time a crime is committed governs the sentence for that crime." *Gutermuth v. State*, 868 N.E.2d 427, 432 n.4 (Ind. 2007). Furthermore, the amended versions of the pertinent sentencing statutes explicitly state which sentencing ranges apply for crimes committed before and after July 1, 2014. Since Parsley's crimes were committed prior to the effective dates of the amendments to the sentencing statutes, we decline his request to revise his sentences by applying a different sentencing range. Also *see*, Ind. Code § 1-1-5.5-21(b) (2014) ("The general assembly does not intend the doctrine of amelioration (see *Vicory v. State*, 400 N.E.2d 1380 (Ind. 1980)) to apply to any SECTION of P.L. 158-2013 or P.L. 168-2014.").

Looking at the nature of Parsley's offenses, the evidence establishes that Parsley dealt a controlled substance on at least two occasions and did so without a valid prescription for the controlled substance. The record reflects the ease with which Parsley was able to obtain controlled substances from different sources on short notice. Although Parsley argues now that he is a drug addict who was feeding his own addiction at the time of his offenses, he testified during his sentencing hearing that he was not a drug addict.

As for Parsley's character, his criminal history shows that he has demonstrated a continued disregard for obeying the law. His juvenile record establishes that he was placed

9

on probation for possessing and dealing marijuana. As an adult, Parsley was convicted of battery resulting in bodily injury, possession of marijuana, harassment, domestic violence, two counts of menacing by stalking, invasion of privacy, and two counts of battery resulting in bodily injury. He was also convicted of furnishing alcohol to a minor and aggravated battery. Additionally, he was arrested on several occasions between 2003 and 2011, which were resolved by way of pretrial diversion programs. After his arrest in this matter, he was arrested and charged with several felony counts of dealing drugs and trafficking with an inmate.

Parsley has not met his burden of persuading us that his sentence is inappropriate in light of the nature of the offense and the character of the offender. We conclude that his sentence is not inappropriate under Indiana Appellate Rule 7(B) review.

## CONCLUSION

In light of the foregoing, we affirm Parsley's convictions and sentence.

Affirmed.

BAKER, J., and ROBB, J., concur.

10