# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2015, 7:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony S. Churchwood
Deputy Public Defender
Fort Wayne, IN

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Reginald Gant,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 30, 2015

Court of Appeals Case No.
02A03-1412-CR-445

Appeal from the Allen Superior
Court

The Honorable John F. Surbeck,
Judge

Cause No. 02D04-1404-FC-108

**Najam, Judge.**

# Statement of the Case

Reginald Gant appeals his conviction for domestic battery, as a Class D felony. Gant presents one issue for our review, namely, whether the State presented sufficient evidence to support his conviction.

We affirm.

# Facts and Procedural History

On April 11, 2014, Jennifer Fryback traveled with JaMarcus Sheffield to Gant's home in Fort Wayne, where Gant lived with his mother, to pick up E.F., Gant's eight-month-old son with Fryback. Fryback and Sheffield were in a relationship. When Fryback and Sheffield arrived at Gant's home, Gant was outside with several friends. Fryback exited the vehicle, and Gant approached her. Immediately, Gant began asking Fryback questions about Sheffield. While Gant questioned Fryback, the two proceeded into Gant's home so that Fryback could gather E.F. and his belongings. Sheffield remained in the vehicle.

As Fryback collected E.F., Gant asked her if she and Sheffield were in a relationship, to which Fryback responded that Sheffield was "a friend of a friend." Tr. at 85. Gant stated that he did not believe Fryback and exited the home, leaving Fryback inside. Gant entered the vehicle to ask Sheffield about his relationship with Fryback, and Sheffield responded that their relationship was sexual in nature. At Sheffield's response, Gant, who had a firearm tucked

into his waistband, told Sheffield to exit the car because "[i]t's about to get real wet." *Id.* at 60. Undeterred, Sheffield exited the vehicle.

[5] Meanwhile, Fryback had begun putting E.F. into the car, and she heard Gant tell Sheffield to get out of the vehicle. In an attempt to avoid an escalation of the confrontation, Fryback asked Sheffield to leave the premises, and she got into the car with Gant and drove away. E.F. was sleeping in the backseat of the car.

[6] Fryback and Gant continued to argue as Fryback drove around Fort Wayne, and their argument continued when Fryback ultimately parked in a nearby neighborhood. While stopped, the two faced each other, and their discussion became increasingly heated. Gant, who held his gun in his right hand, then struck Fryback in her left jaw with his right hand. Fryback's eyes were closed when Gant struck her, so she did not see the attack coming. E.F. woke when Gant hit Fryback. Soon thereafter, Fryback and Gant returned to Gant's home, and Fryback left with E.F.

[7] Fryback suffered redness, swelling, and bruising to her left jaw, and, the next morning, Fryback called the Fort Wayne Police Department to report the incident. Later that day, Gant came to Fryback's home, and Fryback again called the police, and Gant was arrested soon after. On April 17, 2014, the State charged Gant with criminal confinement, as a Class C felony; battery, as a Class C felony; pointing a firearm, as a Class D felony; and domestic battery, as

a Class D felony. Subsequently, the State dismissed the pointing a firearm charge.

[8] The trial court held Gant's jury trial on October 21 and 22, 2014. At the conclusion of his trial, the jury acquitted Gant of criminal confinement and battery but convicted him of domestic battery. Following a sentencing hearing held on November 17, 2014, the trial court sentenced Gant to three years in the Department of Correction, with two years suspended to probation. This appeal ensued.

## Discussion and Decision

[1] Gant contends that the State failed to present sufficient evidence to support his conviction for domestic battery. Our standard of review for sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations and quotation marks omitted).

[2]     To prove that Gant committed domestic battery against Fryback, as a Class D felony, the State was required to show:  Gant (1) knowingly or intentionally; (2) touched Fryback, an individual with whom he had a child in common; (3) in a rude, insolent, or angry manner; (4) in the physical presence of a child less than sixteen years of age; (5) knowing that the child was present and might be able to see or hear the offense; (6) which resulted in bodily injury to Fryback.  *See* Ind. Code § 35-42-2-1.3.

[3]     Gant does not contest that the evidence adduced at trial, if reliable, established each element of domestic battery, as a Class D felony.  Instead, Gant asserts that Fryback, the victim, was the only witness against him, and "[s]he gave inconsistent testimony that was completely uncorroborated by any independent evidence.  Further, he[r] testimony was not supported by any surrounding circumstances."  Appellant's Br. at 10.  Specifically, Gant argues:

> [Fryback] described the scene and said that she was in the driver's seat[,] and Mr. Gant was on her right in the passenger's seat.  She stated that he struck her with the firearm in his right hand on the left-side [sic] of her face.  The physical position in the vehicle described by Ms. Fryback is not realistic and goes against common sense.  She had also claimed in prior statements that Mr. Gant had held the firearm to her head during the car ride when[,] at trial[,] she stated that he never pointed it at her.

Appellant's Br. at 12-13.  Gant also takes issue with photographs of the injuries to Fryback's face, which he contends do not "portray any injury, save a small amount of redness.  The redness, if any, is completely inconsistent and contrary

to her story of being struck with a firearm." *Id.* at 13. Thus, Gant maintains that Fryback's testimony was "incredibly dubious." *Id.* at 12.

[4] "The incredible dubiosity rule allows the Court to impinge upon a jury's responsibility to judge the credibility of the witnesses only when confronted with inherently improbable testimony." *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015) (internal quotation marks omitted). The rule should only be applied in very limited circumstances. *Id.* Indeed, as our supreme court has explained:

> Under this rule, a court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. . . . A court will only impinge upon the jury's duty to judge witness credibility where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion[,] and there is a *complete lack of circumstantial evidence* of the appellant's guilt.

*Id.* (emphasis in original; internal citations and quotation marks omitted).

[5] The incredible dubiosity rule does not apply here, and Gant's attempt to use the rule is merely an attempt to circumvent the ordinary rule that, in sufficiency challenges, we cannot reweigh the evidence and assess the credibility of witnesses. Fryback testified that she and Gant faced each other in the car, as she sat in the driver's seat and as Gant sat in the passenger's seat. While in this position, Gant struck her in the left side of her face with his right hand, in which he held a firearm. Nothing about this testimony "goes against common sense," Appellant's Br. at 13, or is inherently contradictory such that we would

invoke the incredible dubiosity rule.[1]  Further, although Gant disputes the content depicted in the photographs of Fryback's injuries, it was the province of the jury to weigh that evidence, and we will not impinge that power here. Finally, although it is true that, over the pendency of Gant's case, Fryback first said that Gant pointed the gun at her and later stated that he did not do so, the State dropped Gant's pointing a firearm charge prior to his trial.  And, moreover, this inconsistency is irrelevant to whether Gant struck Fryback in the face, which provided the basis for his conviction for domestic battery.

[6]  Gant also contends that the jury's acquittal of Gant on the charge of battery is "suggestive that there was insufficient evidence" to convict him of domestic battery.  Appellant's Br. at 13.  However, as Gant recognizes, "[j]ury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010).  Therefore, we hold that the State presented sufficient evidence to convict Gant of domestic battery, as a Class D felony.

[7]  Affirmed.

Baker, J., and Friedlander, J., concur.

---

[1] From Fryback's testimony, the jury could infer that, although Gant held the firearm in his hand when he struck Fryback, he hit her only with his hand and not with the firearm itself.