## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2018, 6:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert L. Moore,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 29, 2018

Court of Appeals Case No.
15A01-1711-CR-2767

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1605-F4-0026

**Mathias, Judge.**

[1]   Robert L. Moore ("Moore") was found guilty in the Dearborn Superior Court of Level 4 felony conspiracy to commit dealing in a narcotic drug weighing at least one gram, Level 5 felony dealing in a narcotic drug, and was adjudicated

an habitual offender. The trial court sentenced Moore to an aggregate term of twenty-eight years executed in the Department of Correction ("DOC"). Moore appeals and raises the following issues, which we restate as:

> I. Whether the State presented sufficient evidence to support Moore's conviction for dealing in a narcotic drug; and

> II. Whether the State presented sufficient evidence to establish that Moore conspired to deal at least one gram of a narcotic drug.

We affirm in part, reverse in part and remand for proceedings consistent with this opinion.

## Facts and Procedural History

On May 13, 2016, Trevor Adkins ("Adkins") was arrested on an outstanding warrant for possession of heroin in Dearborn County, Indiana. Adkins volunteered to contact drug dealers he had purchased from in the past to assist police officers who conduct controlled drug buys.

Later that same day, Adkins voluntarily contacted a heroin dealer who was later identified as Kevin Sanders ("Sanders"). The Greendale Police Department orchestrated the logistics of the controlled buy, and Adkins relayed that information to Sanders. Adkins and Sanders agreed to meet at Party at Trav's Fireworks ("Trav's").

Officer Dustin Hatfield ("Officer Hatfield") drove Adkins to Trav's in his personal vehicle, a blue Ford F-150 ("Ford"). Prior to arriving at Trav's, officers

searched the Ford to ensure that there were no illegal substances or other contraband in the vehicle. The officers also conducted a pat-down search of Adkins to "make sure he had no money or contraband on his person[.]" Tr. Vol. I, p. 83.

[6] Upon arriving at Trav's, the officer transporting Adkins requested that the meet-up location be changed "due to officer safety" because "it was dark, the lighting [at Trav's] was poor[.]" *Id*. at 25. Adkins asked Sanders to meet him at Ameristop's parking lot, which shared a parking lot with Trav's but had better lighting. Sanders called Atkins on the way to Ameristop and informed Adkins that he was lost and needed to stop and get gas. Adkins agreed to meet Sanders at a Shell Gas Station which was approximately two-tenths of a mile from the Ameristop. *Id*. at 28. Sanders told Adkins to look for a white Camaro.

[7] Officer Hatfield "observed only one white [Camaro] in the parking lot[,]" and he parked his truck directly in front of the Camaro. *Id*. at 30. He was able to see the driver and passenger in the Camaro, and Adkins identified the passenger as Sanders. Before Adkins exited the Ford, he and Officer Hatfield watched Sanders climb into the back seat of the Camaro. Adkins then approached the Camaro, entered the vehicle, and sat in the front passenger seat. Officer Hatfield had a clear view of Adkins and the driver, who was later identified as Moore. The officer saw Moore give Adkins an unidentifiable object and watched Adkins hand Moore the $200 buy money. As they had planned, Adkins signaled to Officer Hatfield when the transaction was complete.

Thereafter, Adkins gave Officer Hatfield a clear plastic bag containing a white substance that was later identified as fentanyl.

[8] Three officers approached the Camaro after Adkins purchased the fentanyl from Moore. As Officer Hatfield removed Moore from the driver's seat, the money Adkins gave to Moore fell from his lap. Sanders and Moore were immediately arrested, and the officers searched the vehicle. During the vehicle search, the officers found a rock-like substance wrapped in brown paper in the backseat.

[9] The two substances were submitted to a testing lab, and both were identified as fentanyl. The clear bag of fentanyl weighed 0.76 gram, and the rock-like substance contained 0.25 gram of fentanyl. The aggregate weight of fentanyl found in Moore's possession was 1.01 grams. On May 16, 2016, the State charged Moore with Level 4 felony conspiracy to commit dealing in a narcotic weighing at least one gram, and Level 5 felony dealing in a narcotic drug. The State also alleged that Moore is an habitual offender.

[10] On October 5, 2017, a two-day bench trial was held. The chemist who performed the preliminary and conclusive testing testified that there was a margin of error of ±0.02 gram per each sample of fentanyl. Tr. Vol. I, p. 180. The chemist agreed with the trial court that "if you [took] the total net weight you would [] actually be somewhere then between" 0.97 to 1.05 grams. *Id*. at 185. Moore's counsel argued that because of the margin of error, the evidence was insufficient to prove a weight of at least one gram. *Id*. at 227.

The court disagreed and found Moore guilty of Level 4 felony conspiracy to deal a narcotic drug weighing at least one gram and Level 5 felony dealing in a narcotic drug, and found that Moore is an habitual offender. At Moore's sentencing hearing on October 25, 2017, the court considered Moore's criminal history an aggravating factor. The court found as a mitigating factor Moore's medical conditions, specifically, his significant, chronic cardiac and vascular complications. The trial court sentenced Moore to serve an aggregate term of twenty-eight years executed in the DOC; specifically, the court sentenced Moore to serve a concurrent term of ten years for the Level 4 felony conspiracy to commit dealing in a narcotic drug weighing at least one gram, and five years for the Level 5 felony dealing in a narcotic drug. For the habitual offender adjudication, Moore's sentence was enhanced by eighteen years. Moore now appeals.

## Discussion and Decision

Moore argues that the State presented insufficient evidence to support his convictions for dealing in a narcotic and conspiracy to commit dealing in a narcotic drug weighing at least one gram. When considering a challenge to the sufficiency of evidence to support a conviction, we respect the factfinder's exclusive province to weigh conflicting evidence, and we therefore neither reweigh the evidence nor judge witness credibility. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the judgment, and "must affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a

reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'"
*Id*. (quoting *Tobar v. State*, 740 N.E.2d 109, 111–12 (Ind. 2000)).

## I. Sufficient Evidence of Dealing

[13] To convict Moore of Level 5 felony dealing in a narcotic drug, the State was required to prove beyond a reasonable doubt that Moore possessed fentanyl with intent to deliver. *See* Ind. Code § 35-48-4-1; Appellant's App. Vol. II, p. 125. Here, Moore contends that the State failed to provide sufficient evidence to prove that he "agreed to or participated in the sale or distribution of a narcotic." Appellant's Br. at 12. Specifically, Moore argues that Adkins arranged to purchase the fentanyl through Sanders, and only Sanders occupied the backseat where the brown rock-like substance (later identified as fentanyl) was found. Thus, Moore claims that the State proved that only Sanders possessed the fentanyl.

[14] Moore ignores Officer Hatfield's testimony that he saw Adkins hand Moore $200 and then watched Moore hand an item to Adkins. It is reasonable to infer that Moore gave Adkins the clear plastic bag that contained 0.76 gram of fentanyl. Adkins then signaled to Officer Hatfield that the transaction was complete. Further, upon removing Moore from the Camaro, Office Hatfield saw the "buy money" fall from Moore's lap. This evidence establishes that although Adkins arranged to purchase heroin from Sanders, Moore was an active participant in the drug deal.

[15]  Moreover, Moore constructively possessed both the clear bag of fentanyl and the fentanyl found in the backseat. A conviction for possession of a controlled substance may rest upon proof of either actual or constructive possession. *Britt v. State*, 810 N.E.2d 1077, 1082 (Ind. Ct. App. 2004). Evidence of constructive possession is sufficient where the State proves that the defendant had both the intent and capability to maintain dominion and control over the contraband. *Hardister v. State*, 849 N.E.2d 563, 573 (Ind. 2006). "A substance can be possessed jointly by the defendant and another without any showing that the defendant had actual physical control thereof." *Godar v. State*, 643 N.E.2d 12, 14 (Ind. Ct. App. 1994), *trans. denied.*

[16]  The evidence established that Moore had the intent and capability to maintain control and dominion over the fentanyl. Although the State did not prove that Moore owned the Camaro, he drove the car from Ohio to Lawrenceburg, Indiana, and had a possessory interest in the vehicle as the driver. And our supreme court has explained that "proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question." *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind. 1984), *cert. denied; see also State v. Emry*, 753 N.E.2d 19, 22 (Ind. Ct. App. 2001). Furthermore, Moore's participation in the controlled buy established his knowledge and possession of the fentanyl.

[17]  Moore's claim that he merely agreed to give Sanders a ride is simply a request to reweigh the evidence and credibility of the witnesses, which we will not do. *McHenry v. State*, 820 N.E.2d at 126. For all of these reasons, we conclude that

the State presented sufficient evidence to prove that Moore committed Level 5 felony dealing in a narcotic drug.

## II.  Sufficient Evidence of the Weight of the Fentanyl

[18]    To convict Moore of Level 4 felony conspiracy to commit dealing in a narcotic drug, the State was required to prove beyond a reasonable doubt that Moore agreed with another person to commit dealing in a narcotic, and that he or the person he agreed with took an overt act in furtherance of the conspiracy to deliver at least one gram of fentanyl.[1] *See* Ind. Code §§ 35-41-5-2; 35-48-4-1; *see also* Appellant's App. Vol. II, p. 14. Moore argues that the State failed to prove beyond a reasonable doubt that the aggregate weight of the drugs was at least one gram because the State's own expert testified "there was reasonable doubt as to the aggregate weight."[2] Appellant's Br. at 14.

[19]    In *Halsema v. State*, 823 N.E.2d 668, 674 (Ind. 2005) our supreme court held that the State may establish the weight element of a drug offense in one of two ways: (1) by offering evidence of the actual, measured weight of the drugs, or (2) by demonstrating that the quantity of the drugs is so large as to permit a

---

[1]Indiana Code Section 35-48-4-1 provides that dealing in a narcotic drug is a Level 5 felony, except as provided in subsections (b) through (e). The pertinent exception here is subsection (c), which provides that "the offense is a Level 4 felony if: (1) the amount of the drug involved is at least one (1) gram but less than five (5) grams[.]"

[2] Moore also argues that the drugs found in the backseat of the car should not have been included in the total weight used to convict him. Appellant's Br. at 13–14. But since we conclude that the State has failed to prove beyond a reasonable doubt that the aggregate weight of the fentanyl was at least one gram, we will not address this issue.

reasonable inference that the element of the weight has been established.[3] More recently, the court reiterated that "only direct evidence, not circumstantial evidence, may sustain a weight enhancement." *Buelna v. State*, 20 N.E.3d 137, 148 (Ind. 2014).

[20] Here, the State offered testimony from a chemist who testified that the two packages of fentanyl had an aggregate weight of 1.01 grams. Tr. Vol. I, p. 185. However, the chemist also testified that there is a margin of error of ±0.02 grams per each sample. *Id*. at 180. Therefore, based on the expert testimony, the precise aggregate weight of the fentanyl is between 0.97 and 1.05 grams.[4] The State presented circumstantial evidence that Moore knew he was delivering one gram because Adkins agreed to purchase one gram for $200, but circumstantial evidence is not sufficient to sustain a weight enhancement. *See Buelna*, 20 N.E. 3d at 137. Therefore, the State failed to present evidence to prove beyond a reasonable doubt that the aggregate weight of the fentanyl was at least one gram. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (stating we will affirm the conviction, unless no reasonable fact-finder could conclude the elements of the crime were proven beyond a reasonable doubt). For these reasons, we find

---

[3] Neither party argues that the quantity of drugs is so large as to permit a reasonable inference to establish the element of weight.

[4] During trial, the chemist referenced hand-written notes, and counsel stated these "hand written notes that are finalized in a report" were provided to defense counsel. Tr. Vol. I, p. 167. However, we note that the chemist's final report was not submitted as part of the record before us.

that the evidence was insufficient to support Moore's Level 4 felony conviction for conspiracy to commit dealing in a narcotic drug weighing at least one gram.

## Conclusion

[21] Under these facts and circumstances, we conclude that the evidence is sufficient to support Moore's conviction for Level 5 felony dealing in a narcotic drug. But with regard to the conspiracy charge, we conclude that the State failed to prove beyond a reasonable doubt that the weight of the fentanyl was at least one gram. Therefore, we remand this case to the trial court with instructions to enter judgment for conspiracy to commit dealing in a narcotic drug as a Level 5 felony, and to impose a new sentence accordingly.[5]

[22] Affirmed in part, reversed in part, and remanded.

Riley, J., and May, J., concur.

---

[5] Because we reverse and remand for resentencing, we will not address Moore's claim that his sentence is inappropriate in light of the nature of the offense and his character.