## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 24 2019, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Raul Ibarra Serrano,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | June 24, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2808<br><br>Appeal from the Cass Superior Court<br><br>The Honorable Richard A. Maughmer, Judge<br><br>Trial Court Cause No.<br>09D02-1708-F4-22 |

**Brown, Judge.**

[1] Raul Ibarra Serrano appeals his convictions for burglary as a level 4 felony and theft as a level 6 felony. He raises one issue which we restate as whether the evidence is sufficient to sustain the convictions. We affirm.

## Facts and Procedural History

[2] At approximately 6:00 a.m. on August 3, 2017, while it was dark outside, Edward Zimmerman noticed a dark vehicle, which was turned off, blocking his driveway in Logansport, Indiana. He observed a person move at a quick pace from the middle of a two-acre field across the street from his house and enter the vehicle's passenger side, and he called 911. Within one or two minutes, Logansport Police Officer Jason Rozzi arrived at the scene, observed the vehicle backing up, and activated his emergency lights. Officer Rozzi saw the driver, recognized him as Jeremy Colon-Nieves, and noticed that he was sweaty, nervous, and out of breath. He told Colon-Nieves to turn off his vehicle, and he did so. As Officer Rozzi was obtaining the vehicle's license plate information, Colon-Nieves turned the vehicle back on, "floored it and took off," and drove through a yard and into the street, and Officer Rozzi radioed for help and ran to his patrol vehicle. Transcript Volume II at 232. Colon-Nieves led officers in a vehicular chase at an "extreme high rate of speed" until his vehicle skidded, struck and bounced over a curb, and came to a stop. *Id.* at 234. He and Serrano then exited the vehicle and fled from the officers on foot, and the officers ultimately apprehended them. The officers investigated the area near Zimmerman's home and observed multiple sets of footprints in the dewy grass which came from the area of the apartments off of

Maplewood Drive. The footprints ended on the north side of the grassy area, and police lost the trail north of that point. A detective photographed all of the items found in Colon-Nieves's vehicle.

[3] On August 5, 2017, Adriana Jose returned from a vacation to an apartment which she shared with her three children and boyfriend on Maplewood Drive, discovered that her apartment door had been kicked in, and called the police. The apartment complex is located to the north of the field near Zimmerman's residence. The items missing from Jose's apartment included a microwave, two televisions, an X-Box and games, two laptops, clothes, jewelry, shoes, and two small tables.[1] A detective showed Jose photographs of items in Colon-Nieves's car, and she identified items that had been taken from her apartment. The detective also observed that an end table which remained in Jose's apartment matched the two tables he had photographed.

[4] The State charged Serrano, as amended, with: Count I, burglary as a level 4 felony; Count II, resisting law enforcement as a class A misdemeanor; and Count III, theft as a level 6 felony. Following a trial in May 2018, a jury found him guilty on Counts II and III and were deadlocked on Count I. The court later sentenced him to 365 days on Count II and 730 days on Count III to be served concurrently. Another trial was held in August 2018, at which Jose testified that Colon-Nieves had previously visited her apartment as a guest of

---

[1] Jose testified that she had three tables which were part of a matching set, that one of tables was still in the apartment, and that the other two were missing.

her boyfriend, the court instructed the jury as to accomplice liability, and the jury found Serrano guilty of burglary as a level 4 felony under Count I. The court sentenced him to 2,190 days on Count I to be served consecutive to his sentence on Count II and concurrently with his sentence on Count III. Serrano filed a motion to correct error, which the court denied.

### *Discussion*

[5] The issue is whether the evidence is sufficient to sustain Serrano's burglary and theft convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[6] Serrano argues that, although he had been in the vicinity of the apartments on August 3rd, mere presence at or near the scene of a burglary is insufficient to sustain a conviction. He argues that it is not known exactly when Jose's apartment was burglarized, no evidence places him at the apartment, and the footprint trail ended before reaching the apartment. He also argues that possession of stolen property is not enough to sustain a conviction and the fact he ran away when the vehicle crashed does not prove his guilt. He argues "[s]ome of Jose's property was in Colon-Nieves's vehicle," "it is unknown when the items were stolen: it may have occurred days earlier," "[t]he car containing the items was not very far away from the theft," and "[i]t is equally

likely that Colon-Nieves stole the property earlier, and that [Serrano] happened to be in the car that morning." Appellant's Brief at 23-24. The State responds that ample evidence was presented from which the jury could find Serrano guilty, Colon-Nieves had been inside Jose's apartment, Zimmerman and police observed Serrano committing actions consistent with leaving the scene of the burglary or retrieving items stolen as part of the burglary, and that Serrano and Colon-Nieves led officers on a high speed chase followed by a foot chase.

[7] Ind. Code § 35-43-2-1 provides that a person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary and that the offense is a level 4 felony if the building or structure is a dwelling. Ind. Code § 35-43-4-2 provides that a person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft and that the offense is a level 6 felony if the value of the property is at least $750 and less than $50,000.

[8] Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990). On appellate review of circumstantial evidence of guilt, this Court need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but rather whether inferences may be reasonably drawn from that evidence which support the verdict beyond a reasonable doubt. *See id*. at 1318. Identification testimony need not necessarily be unequivocal to sustain a conviction. *Heeter v. State*, 661

N.E.2d 612, 616 (Ind. Ct. App. 1996). Although the fact a defendant flees or does not flee does not indicate either guilt or innocence of itself, flight and related conduct may be considered by a jury in determining a defendant's guilt. *See Dill v. State*, 741 N.E.2d 1230, 1232-1233 (Ind. 2001).

[9] A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. Ind. Code § 35-41-2-4. An accomplice "is criminally responsible for all acts committed by a confederate which are a probable and natural consequence of their concerted action." *McGee v. State*, 699 N.E.2d 264, 265 (Ind. 1998) (citations and internal quotation marks omitted). It is not necessary that a defendant participate in every element of a crime to be convicted of that crime under a theory of accomplice liability. *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002), *reh'g denied.* In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such factors as: (1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose commission of the crime; and (4) course of conduct before, during, and after occurrence of the crime. *Id.* A defendant's mere presence at the crime scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability. *Tobar v. State*, 740 N.E.2d 109, 112 (Ind. 2000). However, these factors may be considered in conjunction with a defendant's course of conduct before, during, and after the crime, and a defendant's companionship with the one who commits the crime. *Id*.

[10] While the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft, such possession "is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away)." *Holloway v. State*, 983 N.E.2d 1175, 1179 (Ind. Ct. App. 2013) (citations and internal quotation marks omitted). "The fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* (citing *Girdler v. State*, 932 N.E.2d 769, 773 (Ind. Ct. App. 2010) (noting that possession of recently stolen property is to be considered along with the other evidence in a case and the circumstances of the possession) (citing *Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010))). The trier of fact must assess all of the evidence instead of focusing upon one piece of evidence, such as possession of recently stolen property. *Id.*

[11] Serrano does not dispute that the evidence demonstrates that property taken from the apartment off of Maplewood Drive shared by Jose and her boyfriend was discovered in Colon-Nieves's vehicle and that the vehicle was not very far from the burglarized apartment during the time she was on vacation. He also does not dispute that the apartment was a dwelling or that the value of the stolen property was at least $750. The record reveals that Jose identified items discovered in Colon-Nieves's vehicle as the items taken from the apartment.

[12]     The State presented evidence that Colon-Nieves's vehicle was parked near Zimmerman's home in the early morning when it was dark outside, that Serrano moved quickly from the middle of the field across the street and entered the vehicle, that upon approaching the vehicle Officer Rizzo observed that Colon-Nieves was sweaty and out of breath, and that Colon-Nieves and Serrano led police on a high-speed vehicular chase followed by a foot pursuit. Zimmerman testified that his street is very private, two residences have driveways on the street and another has a rear entrance on the street, and the street is a dead-end. The State presented aerial maps depicting the location of the burglarized apartment relative to Zimmerman's driveway where Colon-Nieves and Serrano were parked and the location of the field relative to the apartment and the driveway. A police officer testified that his investigation revealed multiple sets of footprints in the dewy grass which came from the area of the apartments off of Maplewood Drive, and the officer pointed to the area that the police lost the trail of footprints. Jose indicated the location of her apartment and that, looking out the back of her apartment, there were trees and, to the left, a field. The detective who photographed the items in Colon-Nieves's vehicle testified the items were packed in the vehicle with grass all over them which indicated to him that the items had been laying in grass at some point. He also testified that an end table in Jose's apartment matched two tables found in Colon-Nieves's vehicle. Jose testified that she had seen Colon-Nieves at her apartment a couple of times before the break-in and that he had been a guest of her boyfriend. A rational factfinder could find that Serrano as a principal or accomplice broke and entered the Maplewood Drive apartment

with intent to commit theft in it and knowingly or intentionally exerted unauthorized control over property of another person with intent to deprive its owner of its value or use.

[13] Based upon the record, we conclude the State presented evidence of probative value from which the jury could have found Serrano guilty beyond a reasonable doubt of burglary as a level 4 felony and theft as a level 6 felony. *See Holloway*, 983 N.E.2d at 1179-1180 (noting the defendant was in a position to know when the victim's townhome was unoccupied, had the opportunity to commit the crimes, and possessed the property taken from the townhome a short time after the items had been taken, and holding a rational factfinder could have found the defendant committed the burglary and theft).

[14] For the foregoing reasons, we affirm Serrano's convictions.

[15] Affirmed.

May, J., and Mathias, J., concur.